RAWSON *against* THE STATE OF CONNECTICUT:

IN ERROR.

Where the complaint of a grand-juror for a violation of the 2nd section of the statute of 1846, regulating the sale of wines and spiritous liquors, alleged the offence as having been committed "on or about the 24th day of *May*, 1847;" it was held, that the complaint was not insufficient, for want of the requisite certainty as to the time, nor because it was expressed in figures, and not in words at length.

Where the complaint alleged, that the defendant kept a certain house, store and shop, for the purpose of selling wines, &c., to be drank thereat; it was held, that this was not equivalent to an allegation that the defendant kept a house, and a store, and a shop, as three distinct and separate places, for the purpose of selling wines, &c., but the words "house, store and shop," were here used as designating but one place; and consequently, the complaint charged but one offence.

Where the words of the statute, on which the complaint was founded, were, "If any person or persons, except taverners, by agent or otherwise, shall keep any house," &c., and the complaint alleged, that the defendant, &c., without saying by agent, or in what manner; it was held, that the offence described in the statute, was sufficiently alleged in the complaint.

All statutes, whether remedial or penal, should be construed according to the apparent intention of the legislature, to be gathered from the entire language used, in connexion with the subject and purpose of the law.

The rule requiring penal statutes to be construed strictly, means only, that they are not to be so extended, by implication, beyond the legitimate import of the words used in them, as to embrace cases or acts not clearly described by such words, and so as to bring them within the prohibition or penalty of such statutes.

THIS was a complaint, preferred by a grand-juror of the town of *Norwich*, to a justice of the peace, against the present plaintiff in error, for a violation of the statute of 1846, regulating the sale of wines and spiritous liquors. The complaint was in the following words and figures: " That *Calvin G. Rawson*, at the town of *Norwich*, on or about the 24th day of *May, A. D.* 1847, with force and arms, he not being a taverner, did keep a certain house, store and shop, for the purpose of selling wine and spiritous liquors, to wit, rum, brandy, gin and wine, to be drank thereat, against the peace, and contrary to the form of the statute in such case made and provided, and of evil example."

To this complaint the defendant demurred; and the justice adjudged it sufficient, found the defendant *guilty*, and inflicted on him a fine of thirty dollars, payable to the treas-

urer of the town. On an appeal by the defendant to the county court, the same judgment was rendered, by that court, on the same issue. The defendant then brought a writ of error in the superior court, where the judgment of the county court was affirmed. By a motion in error, in behalf of the same party, the record was then brought before this court for revision.

*New-London,*
*July, 1848.*

Rawson
*v.*
The State.

*Hill*, for the plaintiff in error, contended, 1. That the complaint was bad, because it was not written in words at length; a part being in figures. The rule requires that all numbers be expressed in words at length. 1 *Chitt. Cr. L.* 176. *Archb. Cr. L.* 49.   2 *Sw. Dig.* 374.

2. That the complaint is too uncertain as to the *time* of the alleged offence. It was " on, *or about,* the 24th day of *May.*" Certainty is required, that the conviction or acquital of the defendant may be pleaded in bar of a subsequent prosecution for the same offence. 2 *Sw. Dig.* 273. In *Barth* v. *The State,* 18 *Conn. R.* 432., which was a prosecution on the same statute, the offence is alleged to have been committed on a day certain, " *and* on divers other days and times *between that day and the date of the information.*" There ought to be the same certainty here, in this respect.

3. That the complaint is bad, as it charges three, or certainly two, distinct offences, in the same count. The defendant is charged with keeping *a house,* for the purpose of selling wine, &c. He is also charged with keeping a *store and shop,* for the same purpose. Now, although it was held, in *Barth* v. *The State,* that the expression *store* OR *shop,* as used in that information, imported but one place; yet here the expression is *house, store* AND *shop,* making the same distinction between *store* and *shop,* as between *house* and *store.* But admitting that *store* and *shop* are here of equivalent import, it will not be claimed, that *house* and *shop* are synonymous; and in that case, there are two distinct offences charged in the same count; which is as fatal an error as though there were half a dozen. 1 *Chitt. Plead.* 230. *Bac. Abr. tit.* Pleas &c. K.   2 *Sw. Dig.* 283. *Commonwealth* v. *Symonds,* 2 *Mass. R.* 163.

4. That if two or more distinct offences are alleged, the justice to whom the complaint was preferred, had no jurisdic-

*New-London,*
*July,* 1848.

Rawson
*v.*
The State.

tion ; as the amount of the fines would exceed the sum within which his jurisdiction is limited. *Stat.* 171. *s.* 122. (ed. 1838.) *Stat. of* 1846. *p.* 47. *s.* 5.

5. That the complaint is bad, because it does not charge the defendant with having committed any act prohibited by the statute. It is defective, not only in *form*, but in *substance.* The statute prohibits the keeping of any house, &c. for the purpose specified, "*by an agent* or otherwise." *Stat. of* 1846, *p.* 46. *s.* 2. (*a*)   If the house is not so kept, the statute does not touch the case. It will hardly be claimed, that the words "or otherwise," in the statute, help the prosecutor ; for if those words are not too loose to have any effect, he must at least shew *how* otherwise the defendant has kept the house, &c.—which he has not done. Nor is it a sufficient answer to this objection, that the act alleged is as bad as that prohibited by the statute. For, in the first place, neither act would be punishable, if not prohibited by statute, and only *so far* as thus prohibited. But secondly, be it ever so bad, morally and politically, if not the specific offence embraced in the statute, there can be no conviction. It must be within the words used by the legislature, as well as within the mischief which they intended to prevent. 1 *Bla. Com.* 88. 1 *Sw. Dig.* 12. *pl.* 16. *The United States* v. *Sheldon,* 2 *Wheat.* 119. *Van Valkenburgh* v. *Torrey,* 7 *Cowen,* 252. *Church* v. *Thompson, Kirby,* 98. That the words " or otherwise" are void for uncertainty, see *Ely* v. *Peck,* 7 *Conn. R.* 240. 3 *Kent's Com.* citing 1 *Hall's Law Journ.* 209.

6. That this complaint does not describe the offence in the words of the statute, within the rule laid down in *Whiting* v. *The State,* 14 *Conn. R.* 487.

*Wait* and *Park,* for the defendants in error, were stopped by the court.

CHURCH, Ch. J.   This complaint is founded upon the statute of 1846, " regulating the sale of Wines and Spiritous Liquors ;" and was presented, by a grand-juror of the town of *Norwich,* to a justice of the peace, who had jurisdiction of the offence. Several exceptions have been taken to the com-

(*a*) The words of this section of the statute are given in a note, 18 *Conn. R.* 432, 3.

plaint.   And first, that the time of committing the offence is
not alleged, with legal certainty, nor in words at full length,
but in figures—" On or *about* the 24th day of *May*, 1847."

The criminal code of this state is clear in its definition of
crimes, mild in its punishments, and careful in its provisions
for securing full and impartial trials.   It is a false humanity
which would protect offenders, either by stifling detection
and prosecution, or by affording facilities to escape conviction,
by unnecessary and artificial technicalities in the administra-
tion of the law.

In *England*, from whence we have derived much of our
law regulating the forms of criminal procedure, an undue
severity has formerly characterized all penalties; and little
regard was paid in legal enactments to the relative gradation
of crimes and properly apportioned punishments.   Almost
all crimes were felonies, and almost all punishments capital !
Therefore, it was, that, in *favorem vitæ*, the greater human-
ity of the judiciary required the utmost strictness of averment
and description in indictments; and the courts were well
enough disposed to provide this shield against some of the
consequences of a severe code.   Lord *Hale* says, that " the
strictness required in indictments is great, because life is in
danger."   " Therefore, many nice and slender exceptions
have been, of latter ages, allowed ; and these (indictments)
have been, with too much facility, quashed and reversed."
2 *Hale's P. C. ch.* 24. *p.* 168.   1 *Chitt. Cr. L.* 170.   We
are at no loss, therefore, to determine, why the *English*
courts, as well before the statutes of 4 and 6 of *Geo.* 2., as
since, have said, that figures to express numbers were not
allowable in indictments."   The doctrine had its origin in
prosecutions for capital offences, and continued to be applied,
after the severity of punishments had become mitigated.
And yet, at the same time, while figures were rejected as
expressive of numbers, *Roman* numerals were permitted.
2 *Hale's P. C.* 168.   2 *Burn's Just.* 449.   1 *Chitt. Cr. L.*
176.

Under our system of laws, we know of no general rule
more sound and sensible, as applicable to certainty in crim-
inal pleadings, than the one laid down by Ch. J. *DeGrey*, in
delivering the unanimous opinion of all the judges in the

*New-London,*
July, 1848.

Rawson
*v.*
The State.

House of Lords, in the case of *The King* v. *Horne, Cowp.* 672. 682. " But though the law requires certainty, we have no precise idea of the signification of the word, which is as indefinite in itself as any word that can be used." " The charge must contain such a description of the crime, that the defendant may know what crime it is, which he is called upon to answer ; that the jury may appear to be warranted in their conclusion of *guilty* or *not guilty*, upon the premises delivered to them ; and that the court may see such a definite crime, that they may apply the punishment which the law prescribes." And furthermore, in the manner of stating the offence, every fact should be averred, which is necessary to constitute the crime intended to be charged. And in the absence of any such statute provisions as are found in 4 and 6 *Geo.* 2., by which all indictments must be in words at full length, we think the foregoing rules as safe for the accused, as an enlightened administration of public justice demands.

Words at full length afford no greater certainty than figures, in expressing dates. Indeed, for such a purpose, figures seem to be the most appropriate ; and are so used in all civil proceedings and documents, whether legal or mercantile, in which the greatest accuracy is demanded. We find them in deeds, surveys, contracts and all commercial papers. We suppose the use of figures, in drawing up indictments, in this state, has been frequent, though perhaps not general ; and no good reason suggests itself to us why, as a matter of positive law, they should be excluded. They have not been excluded in our sister states. *State* v. *Hodgeden*, 3 *Verm. R.* 481. *Bunce* v. *The State*, 5 *Yerger*, 186. *The State* v. *Raiford*, 7 *Porter*, 101. *The State* v. *Hadock*, 2 *Hawks*, 354.

We have spoken only of indictments, because the *English* law, which has been alone relied upon, in support of this objection, applies only to them, and perhaps to informations made by the attorney general. But we are not informed, that in proceedings before justices of the peace and police magistrates, either in *England* or elsewhere, for the violation of statute regulations merely, the same precision of form has ever been required or observed, as has been generally adopted in indictments and informations. A complaint by a town grand-juror, a prosecuting officer unknown to the common law, has not been regarded by us, in the same light as an in-

*New-London,*
July, 1848.

Rawson
*v.*
The State.

dictment or an information filed by the state's attorney; and although such a proceeding ought to be reasonably certain and definite in its specifications of crimes, yet we do not see that the cause of truth and justice will be promoted, by requiring here technical niceties of no practical importance, which the force of precedent alone has introduced into higher and more solemn modes of prosecution. *Goddard* v. *The State*, 12 *Conn. R.* 448. *Whiting* v. *The State*, 14 *Conn. R.* 488. *Barth* v. *The State*, 18 *Conn. R.* 432.

Another branch of this objection, *viz.*, that the time of committing the offence is not certainly averred, by the words *on or about*, we consider answered, by the remarks already made. The two latter words in this averment, have no meaning in this place, and are surplusage. The course of the evidence and trial could not be at all affected by them.

2. It is again objected, that two distinct offences are charged in one count, in this complaint; and if this be so, it is defective; for the accused is entitled to know definitely, by the complaint, what crime is laid to his charge, that he may be prepared to meet that, and that alone. The second section of the statute, upon which these proceedings are founded, enacts, "If any person or persons, except taverners, by agent or otherwise, shall keep any *house, store, shop,* or other place, for the purpose of selling any wine or spiritous liquors to be drank thereat, &c., every such person shall, on conviction thereof, forfeit and pay, for every such offence, a fine of thirty dollars." The objection supposes the defendant to be charged with keeping a house, and also a store, and also a shop, as three distinct and separate places, for the purpose of selling wine and spiritous liquors; the keeping of each of which constitutes a distinct offence. We do not think that the language of the complaint, understood in its ordinary import, warrants this inference. The grand-juror evidently used the words house, store and shop, as synonymous, and as defining but one place. "*A certain* house, store and shop," equivalent to saying *one certain house*, &c., "to be drank thereat," *viz.*, at that certain place. This language is in the singular throughout, with no allusion to more buildings than one. And he was well warranted in so understanding and using these words, which, in common parlance, and especially in reference to their being houses used for buying

*New-London,*
*July, 1848.*

Rawson
*v.*
The State.

and selling, are generally understood to mean the same thing; and so they have been recently considered, by this court, in the case of *The State* v. *Barth*, 18 *Conn. R.* 432. It cannot be intended, that the pleader would attempt to set out three separate offences, in language so general and sweeping as this. Perhaps a more close and grammatical criticism of this language might give countenance to the defendant's construction of it, but only at the expense of doing violence to its more natural import.

3. It is finally contended, that no offence is alleged in this complaint; because it is not averred, that the defendant kept the house, store and shop, by his agent; and it is claimed, that, if he kept it himself, personally, and not by agent, there has been no violation of the law. This objection is certainly a bold one, and will require strong and decisive authorities to sustain it. It is suggested, by the peculiar language of the statute, which provides, that if any person or persons, except taverners, " by *agent or otherwise*," shall keep any house, &c. Here it is insisted, that the word *otherwise* being used in this connexion in a penal statute, has no meaning, and is to be rejected in its construction. In support of this claim, we are referred to the elementary rule, that penal statutes are to be construed strictly, and to the cases given by *Blackstone*, to show its application. It is said, that under the statute of 1 *Edw.* 6. against stealing horses, a conviction for stealing only one horse, could not be sustained. And also, that the statute of 14 *Geo.* 2., by which the stealing of sheep, *or other cattle*, was made felony, was confined, in its construction, to sheep alone; the words *other cattle* being considered too loose to create a *capital offence.* And Judge *Swift*, borrowing from this doctrine, but without giving any authority, says, in the 1st volume of his *System, p.* 50. " that the statute which renders it a *capital crime* for a woman to conceal the death of a bastard child, either by drowning or secret burying, or *any other way*, must be confined to the only methods of concealment expressed by the statute; and the words " any other way" are void for uncertainty. Without intending to detract from the proper authority of these opinions, it is not improper to suggest, that since the case referred to under the statute of 1 *Edw.* 6. it has been holden, that under a statute making it felony to steal *any bank notes,* the penalty is incurred by

stealing only one note. *Hassel's* case, *Leach's Cr. Law,* 1. 1 *Bla. Com.* 88. *Chitt.* notes. And the other statutes and cases referred to, by *Blackstone* and *Swift,* were severely penal, and by which a death penalty was incurred, for very inferior offences. Such cases do not seem to be parallel with the present, nor to furnish a proper rule for the construction of a statute of a very different character.

All statutes, whether remedial or penal, should be construed according to the apparent intention of the legislature, to be gathered from the language used, connected with the subject of legislation, and so that the entire language shall have effect, if it can, without defeating the obvious design and purpose of the law. And in doing this, the application of common sense to the language, is not to be excluded. Opinion of the Judges, 22 *Pick.* 571. *Commonwealth* v. *Loring,* 8 *Pick.* 370. *Read* v. *Davis, Id.* 514. *United States* v. *Wiltberger,* 5 *Wheat.* 76.

This rule is not inconsistent with the principle, that penal statutes are to be construed strictly. By this is meant only, that they are not to be so extended, by implication, beyond the legitimate import of the words used in them, as to embrace cases or acts not clearly described by such words, and so as to bring them within the prohibition or penalty of such statutes. *United States* v. *Gooding,* 12 *Wheat.* 460. *The Enterprise, Paine,* 32. 4 *Mass.* 471. *Daggett* v. *The State,* 4 *Conn. R.* 61. *United States* v. *Sheldon,* 2 *Wheat.* 119. And there can be no rule which requires courts so to understand a penal law, as to involve an absurdity, or frustrate the evident design of the law-giver. *The American Fur Company* v. *The United States,* 2 *Peters,* 358. But this, it seems to us, we are now required, by this defendant, to do. No man can read this statute, without learning from its entire perusal, that the controuling purpose of the legislature was, to suppress tipling-houses, under whatever pretence or name established ; and thus to prevent the facilities to intemperate and ruinous dram-drinking. To reject the word *otherwise,* from the law, and thus to legalize the evil which it was the object of the statute to prevent, if perpetrated in person, and not by agent, would be, not only absurd, but it would involve a judicial repeal of an important part of the law itself. This word was not incautiously introduced into the statute ; it was

necessary to give full expression to the intent of the legislature. And the question is not so much now, whether this statute shall be construed strictly, as whether we shall lend our aid to the violators of the law, by disregarding one of its most necessary and efficient provisions.

We think the objections to the judgment of the superior court have not been sustained ; and that there is no error in that judgment.

The other Judges were of the same opinion.

Judgment affirmed.