HEZEKIAH BISSELL AND OTHERS *vs.* ELIPHALET BECKWITH AND OTHERS.

The act of 1850 provides that "in suits by or against the representatives of deceased persons, the *entries* and *written memoranda* of the deceased, relative to the matter in issue, may be received as evidence." A woman who claimed to have been defrauded of her property wrote letters to her counsel and to other friends stating the facts of the case. Held, that these letters were written memoranda within the meaning of the statute, and admissible in evidence in a suit brought by her representatives for the recovery of the property after her death.

And where the suit was a bill in equity brought by devisees under her will, to compel the reconveyance of real estate which had been fraudulently obtained from her, the petitioners were regarded as her representatives within the meaning of the statute.

Where the letters contained parts that were inadmissible in evidence by reason of their irrelevancy, and the objection was taken to each letter as a whole and not to the parts that were irrelevant, it was held that the objection could not be sustained if any part was relevant.

Whether the written memoranda left by a deceased wife can be used as evidence in a suit against her husband, in a matter relating to her separate property : *Quære.* The court inclined to the opinion that they may be so used.

BILL in equity brought by the petitioners, who were devisees under the will of Abbie H. Beckwith deceased, against the respondents, one of whom was her husband, to compel a conveyance of certain real estate, a deed of which to one of the respondents was alleged to have been obtained from her in her life time by a fraudulent combination among them. The bill also prayed for an injunction against the further prosecution of an action at law brought by one of the respondents to recover a bond belonging to the deceased, of which the hus-

band for the same fraudulent purpose had made an assignment to the respondent who brought the suit. The case was referred by the superior court to a committee, who reported the facts in the case. The respondents filed the following remonstrance against the acceptance of the report :—

" Now the respondents remonstrate against the acceptance of the report of the committee in this suit, because they say that, on the hearing before said committee, the petitioners, to prove certain allegations in their petition, offered as evidence a letter written on the 1st day of November, 1860, by Abbie H. Beckwith, then the wife of Elias H. Beckwith, one of the respondents, but since deceased, to Alvin P. Hyde, Esq., a copy of which is hereunto annexed, marked B. To the admission of said letter as evidence the respondents objected; and in arguing the question raised by the objection, their counsel urged that the letter was inadmissible, 1st, because it was not an entry or memorandum within the meaning of the statute ; 2d, because it contained declarations which were not relevant to the matter in issue ; and 3d, because this suit was not by or against the representatives of a deceased person. But the committee overruled the objection, and admitted those parts of the letter in evidence which are enclosed in brackets. The petitioners also, upon the hearing, offered in evidence divers other letters written between the 14th day of September, 1860, and the month of May, 1861, by the said Abbie H. Beckwith, then the wife of the said Elias ; to wit, a letter addressed to Ann H. Birge, a sister of the said Abbie and one of the petitioners, dated September 15th, 1860, a copy of which is hereunto annexed, marked A ; a letter to Alvenus Cone, an uncle of the said Abbie, dated November, 1860, but not signed, a copy of which is hereto annexed, marked C ; a letter to A. P. Hyde, Esq., dated November 14, 1860, a copy of which is hereto annexed, marked D ; a letter to the said Ann H. Birge, dated November 26, a copy of which is hereto annexed, marked E ; and a letter to a Mrs. Caulkins, without any date, a copy of which is hereto annexed, marked F. To the admission of each and every of the said letters as evidence the respondents objected, without stating the grounds of their

objection, but the committee admitted them. Wherefore the respondents pray that the report of the committee be rejected."

The letters are too long to be inserted here, but their general character is sufficiently stated in the opinion. The petitioners demurred to the remonstrance, and the case was reserved for the advice of this court.

*Wait* and *Hovey*, in support of the demurrer.

1. The statute of 1850, which provides that in suits by or against the representatives of deceased persons, the entries and written memoranda of the deceased relevant to the matter in issue may be received as evidence, is in derogation of the common law, and should not be extended by construction so as to embrace cases not strictly within the scope of the language used. *Melody* v. *Reab*, 4 Mass., 471; *Gibson* v. *Jenney*, 15 id., 205; *Commonwealth* v. *Knapp*, 9 Pick., 496; *Wilbur* v. *Crane*, 13 id., 284; *Dwelly* v. *Dwelly*, 46 Maine, 377; *Burnside* v. *Whitney*, 21 N. York, 148. The legislature did not intend by this statute to authorize written declarations in every conceivable form to be received as evidence. If they had so intended they would have used language more appropriate to express their intention; as "writings," or "written declarations," instead of "entries and written memoranda." But in using the latter words and no other their intention to limit the authority of the statute to the admission of these classes of declarations only, is clearly shown. The letters of Mrs. Beckwith which were received by the committee as evidence are not "entries" or "written memoranda." "Entry," according to Bouvier, "is the act of setting down the particulars of a sale or other transaction in a merchant's or tradesman's account book." Bouvier's Law Dic., *in verbum.* Wharton, in his Dictionary of Jurisprudence, defines "entry" to be "the act of setting down in an account book the particulars of a trade." It is defined by Worcester to be "the act of registering or setting down in writing; record; as to make an entry in a merchant's account book." And Webster gives this definition: "The act of committing to writing, or

of recording in a book." The word "entries" is generally understood to mean records of dealings or transactions made in books of account. Law writers and judges apply it to all kinds of records made for the purpose of perpetuating the remembrance of the facts, transactions or matters to which they relate. But letters are never referred to or spoken of by them as "entries or memoranda." See *Roe* v. *Rawlings*, 7 East, 279; *Framingham Manufacturing Co.* v. *Barnard*, 2 Pick., 532; *Lawrence* v. *Kimball*, 1 Met., 524. "Memorandum" is defined by both Webster and Worcester to be "a note to help the memory." Worcester says also that it is "a memorial, a record." It would be absurd to claim that Mrs. Beckwith's letters were memorials or records, or that she wrote them to assist her in remembering the transactions to which they refer.

2. The letters were inadmissible on the ground of irrelevancy in whole or in part. The letters to Alvenus Cone, to A. P. Hyde, and to Anna A. Birge, were wholly irrelevant to the matters in issue between the parties. The letters marked *A, B,* and *F,* although containing some matter which was relevant, were for the most part made up of statements and declarations which were not only irrelevant, but were calculated to produce an effect upon the minds of the committee unfavorable to the rights and interests of the defendants. The letter marked *F,* which covers seven pages of the printed record, contains but a little more than one page of relevant matter. The other portion of the letter contains little else than that which is scandalous, and injurious to the feelings of third persons; and for that reason, if the other reasons assigned are insufficient, that letter ought to have been excluded. 1 Greenl. Ev., § 253.

3. If these letters were "entries or memoranda" within the meaning of the statute, they were not admissible against the defendants, because Elias H. Beckwith, one of the defendants, was, at the time they were written, the husband of Abbie H. Beckwith. By a well settled rule of the common law husband and wife can not be witnesses *for* each other because their interests are identical, nor *against* each other

because contrary to principles of public policy which lie at the basis of civil society. 1 Swift Dig., 746; Bull. N. P., 286; 2 Stark. Ev., 399, 400; 1 Phil. Ev., (C. & H. ed.,) 77, 78; 2 Kent Comm., 178; 1 Greenl. Ev., §§ 334, 346; Roscoe Crim. Ev., 112; Gresley's Eq. Ev., 341, 345; *Barker* v. *Dixie*, Cas. Temp. Hardw., 264; *Monroe* v. *Twistleton*, Peake's Ev., ap. 37; *Cole* v. *Gray*, 2 Vern., 79; *Sedgwick* v. *Watkins*, 1 Ves., 49; *Vowles* v. *Young*, 13 Ves., 144; *Gregg* v. *Taylor*, 5 Russ., 19; *Langley* v. *Fisher*, 5 Beav., 443; *Bentley* v. *Cook*, 3 Doug., 422; *Davis* v. *Dinwoody*, 4 T. R., 678; *O' Connor* v. *Majoribanks*, 4 Man. & Grang., 435; *Barbat* v. *Allan*, 10 Eng. Law & Eq., 596; *Alcock* v. *Alcock*, 12 id., 354; *Lucas* v. *The State*, 23 Conn., 18; *Dwelly* v. *Dwelly*, 46 Maine, 377; *Stewart* v. *Stewart*, 7 Johns. Ch., 229; *Leggett* v. *Boyd*, 3 Wend., 376; *Warne* v. *Dyett*, 2 Edw. Ch., 497; *Burrell* v. *Bull*, 3 Sandf. Ch., 15; *Lay Grae* v. *Peterson*, 2 Sandf. S. C., 338; *Capus* v. *Kauffman*, 8 Paige, 583; *The People* v. *Mercien*, 8 Paige, 48; *Hasbrouck* v. *Vandervoort*, 5 Seld., 153; *Manchester* v. *Manchester*, 24 Verm., 649; *Stein* v. *Bowwan*, 13 Pet., 209. So important was this rule considered by Lord Hardwicke that he would not allow a wife to be examined against her husband, even with the husband's consent. *Barker* v. *Dixie*, Cas. Temp. Hardw., 264. And the same course has been pursued by courts in this country. 1 Greenl. Ev., § 340. And the rule has been adhered to after the marriage tie has been dissolved by the death of one of the parties or by a decree of divorce. 2 Stark. Ev., 400; 1 Greenl. Ev., § 337; *Doker* v. *Hasler*, Ry. & Mood., 198; *Barnes* v. *Camack*, 1 Barb., 392; *Stein* v. *Bowman*, 13 Pet., 223. So also where the husband and wife were separated from each other under articles. *Terry* v. *Belch*, 1 Bailey, 568. There are some exceptions to the rule, which are allowed from the necessity of the case, partly for the protection of the wife in her life or liberty, and partly for the sake of public justice; but this case does not come within them. *Bentley* v. *Cook*, 3 Doug., 422; 2 Kent Com., 179, 180; 1 Greenl. Ev., §§ 344, 345, 346. The rule, so far as it is founded on the *identity of interest of husband*

*and wife,* has been abrogated in this state by the 141st section of the act for the regulation of civil actions; Stat., Comp. 1854, p. 95; so that husband and wife are now competent witnesses for each other, as they were previously to the passage of that act, in an action of book debt, under another statute; but so far as the rule is founded on *principles of public policy,* it still exists in full force. *Stanton* v. *Willson,* 3 Day, 37. *Merriam* v. *Hartford & New Haven R. R. Co.,* 20 Conn., 354, 363; *Dwelly* v. *Dwelly,* 46 Maine, 377; *Hasbrouck* v. *Vandervoort,* 5 Seld., 153; *Manchester* v. *Manchester,* 24 Verm., 649; *Alcock* v. *Alcock,* 12 Eng. Law & Eq., 354; 1 Phil. Ev., (C. & H. ed.,) 77. In *Stanton* v. *Willson* a widow, administratrix of her last husband, sued the executors of her first husband (from whom she had been divorced) in an action of book debt, to recover the amount of an account which accrued after the divorce; and the court held that she was a competent witness under the statute in *support* of the charges contained in the account. But in the argument of the case before the supreme court of errors it was admitted by the eminent counsel for the plaintiff (the late Judges Gould and Daggett) that she could neither be compelled nor allowed to testify *against* her husband. In *Merriam* v. *Hartford & New Haven R. R. Co.,* Judge Storrs, in commenting upon the claim made in the argument by the counsel for the defendants, that the reason for the exclusion by the common law of husband and wife, as witnesses *for* each other, was founded partly on a principle of public policy, says: "This argument entirely fails, because that reason applies only where the husband and wife are called to testify *against* each other, *and in such cases we admit that it has very great weight.*"

*Hyde* and *Halsey,* contra.

1. By the act of 1850 the entries and written memoranda of a deceased person relevant to the matter in issue, are made as competent evidence as the testimony of a living witness, both being subject to the same rules in relation to credibility. The statute is a remedial one, and should receive a liberal

construction in furtherance of the remedy which it was intended to furnish. 1 Kent Com., 521; *Wolcott* v. *Pond*, 19 Conn., 597; *Rawson* v. *State*, id., 292. The " entries and memoranda " contemplated by the statute are evidently merely written statements. A technical or limited construction of the words would fall short of the apparent intention of the legislature. The " entries or memoranda " referred to are obviously not such as were admissible at common law. This statute was an extension of the rules of evidence. By the common law declarations against interest, oral or written, were admissible in suits between third persons, and entries in the party's own books were admissible in certain cases in his own favor, and in that of his executors after his death. 1 Greenl. Ev., §§ 118, 131, 147. We say then, that by " written memoranda relevant to the matter in issue " is meant any statement in writing made by the deceased, which if sworn to by a living witness would be admissible evidence in the case.

2. Only those parts of the letters which were relevant to the matters in issue were claimed or admitted. The defendants had a right to have the whole of the letters read, but only the parts relevant were offered as evidence. The portions of the letter marked *B*, which are enclosed in brackets, were clearly relevant. They contained Mrs. Beckwith's statement of the fraud practiced upon her relative to the destruction of the deed. The other letters were admitted after argument of the objections made to this letter without any new or further objections being stated. They are therefore confined to the objections which they had made. But if otherwise, as the objections were general, they were properly admitted if they contained anything relevant to the matter in issue. The committee decided that they each and all contained something relevant to the matter in issue. An examination of the allegations in the petition and of the letters will show that they judged correctly. The objection that the letters contained declarations not relevant to the matter in issue, was frivolous, for the question was, whether they were entries and memoranda within the statute, and if so, if they contained matter relevant. So far as the remonstrance shows anything on the subject, it

shows that the committee only admitted relevant matter. If the fact was otherwise the defendants should point it out. They can not make any objection here which was not made before the committee.

3. The suit was by the representatives of Mrs. Beckwith. The contest related to her estate, and it was to protect that that the statute was enacted. The statute does not say *personal* representatives. The entries would be admissible in favor of her devisees or legatees, or others in privity of estate, as well as in favor of her executor. The executor in this case was a party in interest with the plaintiffs. He was made a party defendant for convenience, but acknowledged service, and was represented by the plaintiffs' counsel.

4. The objection that the letters were inadmissible because the deceased was the wife of one of the respondents was not made in the court below and can not be considered here. We contend however that under our statutes, which recognize and secure the separate rights of the wife, they would not be in admissible on this ground.

McCURDY, J. On the trial of this case before the committee certain letters objected to by the respondents were received in evidence, and the question now respects the propriety of their admission.

It is said by the petitioners that the statute of 1850 is a remedial one and should be construed liberally, while the respondents urge that, being in derogation of the common law, it should be the subject of a strict construction. The statute of 1848 had allowed parties and other persons interested in suits to be witnesses. This change, although on the whole highly beneficial, was attended with some evils, one of which was that it gave to living parties a very great advantage over representatives of the dead. To obviate this the act of 1850 was passed. As to the rule of construction, we recognize the principle laid down in *Rawson* v. *The State*, 19 Conn., 292, that " all statutes whether remedial or penal should be construed according to the apparent intention of the legislature, to be gathered from the entire language used in connection with the subject and purpose of the law." The

object of this law was to enable the representatives of deceased persons to sustain just and defeat unjust claims affecting the estate.

The question what kinds of entries and written memoranda of deceased persons are intended by the statute is an important one, and it now comes for the first time before this court. The forms in which such writings are found, the nature of their contents, their purposes, and the circumstances under which they were written, are so various that it would be difficult in advance of particular cases to designate an exact general rule in relation to their admissibility. It is sufficient that we pass upon the case before us ; and we have no doubt that the decision of the committee was right.

The first objection is that the terms " entries " and " memoranda " have attached to them by usage an established technical legal or mercantile import, and that letters as such never come within the meaning of the expressions. It is obvious that so narrow a construction would in many cases at least defeat the ends of the statute. The definitions in the best dictionaries do not require it. To enter is " to set down in writing." An entry is " a setting down in writing." A memorandum is " a note to help the memory," " a memorial," " a record." The object of a memorandum is as frequently to help the memory of another person as that of the writer. A list of articles to be purchased, or a note of things to be done by a friend or an agent, specifying persons, places, mode of doing the business, &c., is certainly a memorandum, although in the form of a letter. It is well settled that a letter may be a sufficient memorandum of an agreement under the statute of frauds.

In this case Mrs. Beckwith claimed that she had been defrauded of her property by a combination between her husband and his family. She was intending to commence a suit to obtain a restoration of it, and was also proposing to apply for a divorce. She had employed Mr. Hyde as her lawyer, and one of the principal letters objected to contains a statement to him of the facts upon which her case would depend. The averments were made deliberately, by one who was speak-

ing of her own knowledge, for the purpose of being incorporated into legal documents and forming the basis of a judicial decision. There can be no doubt that such statements may be considered as memoranda.

The other letters stand upon similar ground. Some were written to her sister, who was deeply interested in the property at stake and of course in the facts concerning it. Others were addressed to her uncle and aunt, in whom she reposed great confidence, and whose advice and assistance she was invoking upon the case presented. We think these letters also may be treated as memoranda according to both the language and the spirit of the statute.

A second objection is that of one class of these letters certain portions, and of the other class the whole contents, are entirely irrelevant; that the subject matter of the petition is an alleged combination to defraud Mrs. Beckwith of her property, and that all those parts of the letters which complain of mere personal abuse, especially the attempt of the husband to keep his wife at his own home at Colchester, if that was an abuse, have no bearing on the issue.

The reply in relation to the first class is, that inasmuch as some parts of them do refer to the property and the matters concerning it, and are agreed to be relevant, and the other parts were not objected to specifically at the hearing, it is now too late for the respondents to complain that the whole of *these* letters were admitted. In respect to the other class the argument is, that they tend to show a combination between the parties which may well be supposed to have had the property in view. Mrs. Beckwith was taking measures to recover it and was in communication with her counsel for the purpose. She was residing at Hebron, near to him, in the family of her relatives, who were interested with her in the proceedings. Under these circumstances her husband induced her by false pretenses to return to Colchester, where he and his mother were living together, and there they attempted forcibly to keep her subject to their control, away from her friends and her legal adviser. We think these facts were properly

Bissell *v.* Beckwith.

brought to the consideration of the committee in connection with the charges which they were sitting to investigate.

Another suggestion is deserving of attention. A particular account of the Colchester transaction is given in letters which were clearly admissible, and a repetition of the same story could make no difference and do no harm before the able and learned committee.

So far as any of the letters contained charges of personal cruelty on the part of the husband, they produced no effect, as such charges are expressly negatived in the report.

Another question of much interest has been elaborately argued, as to the admissibility of the memoranda of a deceased wife against her husband in an issue involving only her rights of separate property. This point was not made before the committee. According therefore to a well-known rule it is not properly before us, and we decline to make a final decision. But it may not be improper to say that, under the radical changes in respect to these rights which have been made by statute during a few years past, we incline to the views of the petitioners.

We advise that the report be accepted.

In this opinion the other judges concurred.