## THE STATE *vs.* JOHN D. POWERS.

The term "house," in the statute (Gen. Statutes, p. 267, sec. 137) which forbids the keeping of "a disorderly house, or a house where lewd and dissolute persons resort," means any building kept for the purpose named, and not necessarily a dwelling house.

The rule that penal statutes are to be construed strictly does not require that a narrow meaning be put upon their words, but only that a case shall come expressly within the language used.

INFORMATION for keeping a disorderly house, under the 137th section of the "act concerning crimes and punishments," brought to the Superior Court in New London county and tried to the jury before *Loomis, J.*

On the trial the attorney for the state offered evidence to prove that the defendant kept certain rooms on the first floor of a two story building, in the town of Stonington, for the sale of liquors, groceries and confectionery, and that lewd, dissolute and drunken persons were accustomed to resort to the rooms with his knowledge and consent, and that carousing and fighting were permitted there by him to the disturbance of the neighbors, and it appeared that the rooms in the building over the rooms kept by the defendant were, during all the time in question, occupied by one George Bagg and family as a dwelling house, but that no family resided in the rooms kept by the defendant, and that the defendant and his family resided in a separate building near by. No evidence was offered in behalf of the defendant. The defendant claimed, and asked the court to instruct the jury, that if the jury should find these facts, the place so kept by him was simply a shop and not a house, and that it was their duty to return a verdict of not guilty. The court did not comply with the request of the defendant, but instructed the jury that if these facts were found by them, the place so kept by the defendant, to which such lewd, dissolute and drunken persons resorted, and where such carousing and fighting were permitted by the

defendant, to the disturbance of the neighbors, was a disorderly house, within the meaning of the statute.

The jury returned a verdict of guilty, and the defendant moved for a new trial.

*Wait* and *Converse,* in support of the motion.

*Chadwick,* State Attorney, contra.

Park, J.   We fully agree with the counsel for the defendant, that penal statutes are to be construed strictly ; but this rule is not violated by permitting the words of a statute to have their full meaning.   The letter of remedial statutes may be extended to include cases clearly within the mischief the statute was intended to remedy, unless such construction does violence to the language used ; but a consideration of the old law, the mischief, and the remedy, are not enough to bring cases within the purview of penal statutes.   They must be expressly included by the words of the statute.   This is all the difference between a liberal and a strict construction of a statute.   A case may come within the one unless the language excludes it; while it is excluded by the other unless the language includes it.

The defendant does not deny that his case comes clearly within the mischief the statute in question was intended to remedy ; but he insists that the word " house " means only a dwelling place, the abode of human beings, and that inasmuch as that part of the building in which it is alleged that the offence was committed was not a place of that character, he has committed no offence, although he has kept a building in which he permitted drinking, carousing, &c.   The question therefore is, whether the word " house, " as used in the statute, means only a place of abode ; if it does the defendant is undoubtedly right in his claim.

An examination of the statutes will clearly show that the legislature has from time immemorial given a more extended meaning to the word " house."   Thus, for example, the statute (Gen. Statutes, p. 251, sec. 37,) provides a punish-

State *v.* Powers.

ment for " every person who shall wilfully and maliciously burn any state-house, court-house, county-house, poor-house, meeting-house, school-house, &c." All these buildings are called houses, and a term indicating the particular purpose to which each is applied, is prefixed merely to distinguish one house from another. Again, section 48 of the same statute provides for the punishment of " every person who shall wilfully burn any barn, stable, or other out-house, not parcel of any dwelling-house." Here a barn and stable are called houses, in common with other buildings that usually surround the dwellings of farmers. The dwelling house is the principal building and the other buildings are appendages, and so they are called " out-houses, " that is, houses separate from the main building, but useful to it as a dwelling.

An examination of the statutes will further show that the abode of persons is almost invariably called a " dwelling house " or " mansion house; " thereby showing that the legislature considered it necessary thus to particularize in order to render their meaning definite and certain. However lexicographers may define the word " house " it is clear the legislature has used it as generic, and has applied it to nearly all kinds of buildings.

In the case of *Rawson* v. *The State*, 19 Conn., 292, this court held that a complaint containing a single count was not defective on the ground of duplicity, although it charged the defendant with keeping a house, store and shop, for the purpose of selling spirituous and intoxicating liquors. The court say that the words " house, store and shop" were used by the pleader to describe one and the same place. This could not be true if the word " house " means only a place of abode.

We are satisfied that the word " house, " as used in the statute, means any building kept by a person in which the disorderly conduct forbidden by the statute is permitted.

A new trial is not advised.

In this opinion the other judges concurred.