HENRY H. FAULKNER vs. THOMAS SOLAZZI.

Third Judicial District, New Haven, January Term, 1907.

BALDWIN, HAMERSLEY, HALL, PRENTICE and REED, Js.

Barber-shops are not "places of public accommodation" within the
meaning of chapter 111 of the Public Acts of 1905, which pro-
vides that every person who deprives another of "the full and
equal enjoyment of the advantages, facilities, accommodations,
or privileges of any place of public accommodation, amusement
or transportation," on account of alienage, race, or color, shall
pay double damages to the person injured thereby.

Argued January 15th—decided March 6th, 1907.

ACTION against the proprietor of a barber-shop to re-
cover double damages, under chapter 111 of the Public
Acts of 1905, for depriving the plaintiff, a colored man, of
the customary accommodations of the shop, brought to
the Court of Common Pleas in Fairfield County where a
demurrer to the complaint was sustained (*Curtis, J.*) and
judgment rendered for the defendant, from which the plain-
tiff appealed. *No error.*

The complaint alleged, in substance, that the plaintiff
was a colored man, that the defendant was the proprietor
of a barber-shop, and that the latter, contrary to the provi-
sions of chapter 111 of the Public Acts of 1905, and on
account of the former's color, refused to the former, and
deprived him of, the advantages, facilities, privileges and
accommodations of said shop, for which he had applied
and presented himself. The defendant demurred to the
complaint, upon the ground that said barber-shop was not a
place of public accommodation within the meaning of said
Act. The court sustained the demurrer and rendered
judgment for the defendant.

*Elmer H. Lounsbury* and *William W. Bent*, for the ap-
pellant (plaintiff).

*Frederic A. Bartlett* and *Israel J. Cohn,* for the appellee (defendant).

PRENTICE, J. The demurrer sustained was inartificially drawn, but the defendant intended by it to put in issue the fundamental question of the case, and it was accepted by both the plaintiff and the court as accomplishing that result. We may well follow, therefore, the example thus concurred in, and pass to a consideration of the vital issue thus determined. That issue is as to whether or not a barber-shop is a "place of public accommodation," within the meaning of the statute under which the action is brought.

The common law has long been familiar with forms of business regarded as, to use Lord Hale's oft adopted phrase, "affected with the public interest" so as either to confer upon the State some power of regulation in the interest of the public, or to impose certain duties as owed to the individual members of the public, or both. *Munn* v. *Illinois,* 94 U. S. 113; *New Jersey Steam Navigation Co.* v. *Merchants Bank,* 6 How. (U. S.) 344. This public interest which is thus regarded as affecting these employments and agencies of business, is held to arise, for purposes of public regulation, from their enjoyment of some franchise or special privilege granted by the State to be exercised by them for the public convenience, as in the case, for example, of all those so-called quasi-public utilities upon which the power of eminent domain is properly conferrable. *Dow* v. *Beidelman,* 125 U. S. 680, 686, 8 Sup. Ct. Rep. 1028; *Munn* v. *Illinois* (dissenting opinion), 94 U. S. 113. It is also held to arise, for like purposes of public regulation, from the devotion of the property of the business agency to a use in which the public has an interest, so that the manner of its use is of public consequence and affects the community at large, and especially if a natural or virtual monopoly is enjoyed, as in the case of railroads, telegraph and telephone companies, theatres and places of public amusement, gas and water companies, public warehouses, grain elevators, etc. *Munn* v. *Illinois,* 94 U. S. 113, 126; *Chesa-*

*peake & P. Tel. Co.* v. *Baltimore & O. Tel. Co.*, 66 Md. 399, 7 Atl. 809; *Civil Rights Cases*, 109 U. S. 3, 42, 3 Sup. Ct. Rep. 18; *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347, 354, 4 Sup. Ct. Rep. 48; *Budd* v. *New York*, 143 U. S. 517, 547, 12 Sup. Ct. Rep. 468; *Brass* v. *State ex rel. Stoeser*, 153 U. S. 391, 399, 14 Sup. Ct. Rep. 857. Again, there are certain occupations which the law has long clothed with a public character which not only invests the public with the power of regulation, but also, in the absence of regulation, involves duties to the individual members of the public of the most stringent character and highest consequence. Such occupations are those of the common carrier and innkeeper, and they form a class quite apart from those already enumerated. The underlying conception in their case is that theirs is a public employment involving a public service for the public accommodation, and so it has long been held, and quite apart from other considerations, that public policy demanded of them conduct strictly conforming to the conception which the law took of them and without the power of discrimination. *New Jersey Steam Navigation Co.* v. *Merchants Bank*, 6 How. (U. S.) 344, 382; *Rex* v. *Ivens*, 7 C. & P. 213, 219. We do not recall any other conditions which have been recognized by the common law as sufficient to affect with a public interest any class of business or employment carried on by private persons of such a character at least as could be appealed to by the plaintiff, whether by way of analogy or otherwise, in aid of his contention.

The plaintiff has sought to array barber-shops with the class of business agencies first above referred to, to wit, those operating under a franchise or privilege bestowed by the State, and therefore exercising a power not open to all. The reason for this claim is found in the fact that a barber cannot ply his trade without a license, and that all barber-shops are under sanitary regulation and subject to sanitary inspection by a State board. Public Acts of 1903, p. 91, Chap. 130. The object thus sought is not, as we understand, to demonstrate that the State possesses the

power of regulation ; for it is not denied by the defendant that legislation such as is contained in the Act in question could be lawfully aimed at barber-shops, but to affect the defendant's employment with the public interest and thus give it a public color as introductory to a claim that its accommodations therefore properly fall within the descriptive term of the statute, "public accommodations." It will be observed, however, that no license is required to conduct a barber-shop. Any one can do that. The only license required is of the individual who practices his trade therein. The law thus seeks to secure competent and proper workmen in the interest of public safety and health. The proprietor may be unlicensed. If he has qualified as a barber by obtaining authority to ply that trade, he is still in a class with lawyers, physicians, dentists, and permissibly plumbers. The sanitary provisions prescribed are only an exercise of the power which the State has to so regulate and investigate the conduct of any business as may be reasonably necessary to conserve the public health and safety. Whether the State is licensing workmen, or inspecting premises, it is only in the exercise of its power of regulation. It is not conferring franchises or privileges. The public interest which is thus made apparent as attached to the business or place, is that interest, and none other, which the State has as the repository of the power of governmental regulation over all persons and concerns within its jurisdiction, which we are wont to denominate the police power. *Lawton* v. *Steele*, 152 U. S. 133, 14 Sup. Ct. Rep. 499 ; *Woodruff* v. *New York & N. E. R. Co.*, 59 Conn. 63, 83, 20 Atl. 17.

That the property of a barber-shop has no such devotion to the public use as is contemplated in the cases which have followed *Munn* v. *Illinois*, 94 U. S. 113, is too clear for argument.

It is equally clear that the common law has never recognized barber-shops as possessing that peculiar public quality, as places of public accommodation, which is attached to hotels and common carriers, or as owing that duty to

individuals which is imposed upon the latter. *Burks* v. *Bosso*, 180 N. Y. 341, 73 N. E. 58. If so, the plaintiff would be under no necessity of resorting to the statute for redress.

There remains to consider whether there is anything about a barber-shop which fairly entitles the accommodations it furnishes to be denominated, in some popular sense which might enter into the construction of the statute, as "public," as signifying a distinction between them and those furnished by the great majority of other forms of purely private business. The proprietor of a barber-shop seeks private gain by the maintenance of a place of business which appeals to the members of the public for patronage and support. That appeal is often reinforced by sign or symbol attracting attention to his calling. Within he seeks to serve his patrons and minister to their convenience and comfort. If he is enterprising he endeavors to enlarge the field of his patronage and to that end attempts to accommodate with satisfactory service. The assurance of success is found in the satisfaction of a public want and in the accommodation given. Wherein in all this does his service or place of service differ from either the service or place of service of every other man who keeps an office, shop, or other place where personal attention in any line is given to patrons who desire the ministrations afforded. Is he in any different position from the physician, the dentist, the manicurist, the chiropodist, the massage giver, the turkish bath proprietor, etc.? Wherein, to go a step further, does his business differ in essence from that of every shopkeeper or tradesman, unless it be in the personal feature of the service rendered, and that would seem rather to suggest a reason why such an employment should not, both for the sake of the service giver and receiver, be among the first selected to be deprived of the right of selection of patrons. In a sense every business which has a promise of success within it is one which appeals to a public need, and in the sense that it supplies a need it is for the public accommodation. But the term " public ac-

commodation," as descriptive of places within the purview of the Act, clearly was not chosen as one to be interpreted in any such all-embracing sense. The statute plainly embodies an attempt to discriminate between different forms of business and to select certain only for the operation of the statute. No basis for that discrimination can be found in the descriptive language employed, except the well understood one which the common law recognizes and which is aptly indicated by that language.

If, therefore, the statute in question is to be interpreted as comprehending such places as barber-shops, it must be not for the reason that its language, in any legal or popular meaning of it, is fairly descriptive of them, but for the reason that something in the context, or in related statutes, shows that such a construction ought to be placed upon it in order that the legislative intent be given effect. A search will be made in vain for anything which tends to disclose such an intent. On the contrary, if the context may be said to throw any light upon the legislative purpose in its use of terms, the implication would be that as the term "public accommodation," used as defining a class of places brought within the application of the statute, is directly associated with those of public amusement and public transportation similarly used, which have a definite common-law meaning and are plainly used as having that meaning, it was also used in its common-law meaning, equally well understood. To this inference might be added the force of the rule of construction, that where a statute makes use of words which have an accepted meaning at the common law they ought, in the absence of other controlling reasons, to be expounded and received with that meaning. *Leavenworth* v. *Marshall*, 19 Conn. 1, 4.

It would be without profit to inquire what effect should be given in the construction of this statute, to the fact, on the one hand, that it has a remedial purpose, and, on the other, that its provisions are in derogation of a common private right, restrictive of personal liberty, and impose a forfeiture, since no interpretation of the present statute

different from that stated could be given without a violation of the accepted principle that " all statutes, whether remedial or penal, should be construed according to the apparent intention of the legislature, to be gathered from the language used, connected with the subject of legislation, and so that the entire language shall have effect, if it can, without defeating the obvious design and purpose of the law," and that in making the construction " the application of common sense to the language, is not to be excluded." *Rawson* v. *State*, 19 Conn. 292, 299.

There is no error.

In this opinion the other judges concurred.