## WILLIAM J. MULCAHY *vs.* THOMAS F. MULCAHY ET AL., EXECUTORS.

First Judicial District, Hartford, October Term, 1911.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, JS.

Upon an application for a correction of the inventory of the estate of a decedent, by including therein a debt alleged to be due to the decedent from one of the executors, the burden of proving the asserted indebtedness rests upon the applicant; and this is equally true where the same question is raised by an appeal from the allowance of the executors' final account, provided it appears therefrom that the executors have charged themselves with the full amount of the inventory as previously determined. The question, in either aspect, hinges upon the correctness of the inventory, and as to that, the objector or challenger assumes the burden of proving the existence of uninventoried assets of the estate.

A proceeding of the character above described is an "action" against the representatives of a deceased person, within the meaning and intent of General Statutes, § 705, which authorizes the declarations of the decedent relevant to the matter in issue to be received as evidence in such actions.

The case of *Barber's Appeal*, 63 Conn. 393, limited and distinguished.

Argued October 5th—decided November 1st, 1911.

APPEAL by the plaintiff from certain orders and decrees of the Court of Probate for the district of Hartford, taken to and tried by the Superior Court in Hartford County, *Williams, J.;* facts found and judgment rendered affirming the action of the Court of Probate, from which the plaintiff appealed. *Error and new trial ordered.*

*William M. Maltbie,* for the appellant (plaintiff).

*Stanley W. Edwards,* for the appellees (defendants).

PRENTICE, J. This appeal was taken from two orders of the Court of Probate made in the course of the

settlement of the testate estate of a decedent: one denying the petition of an heir at law and legatee that the inventory filed by the executors be corrected by including therein a debt claimed to have been owing from one of the executors to the deceased, but not inventoried, or that the executors be required to so correct the inventory, and the other accepting and allowing the final account later filed by the executors in which said claimed indebtedness did not appear as an asset of the estate. The appeal also complained of the acceptance of this account for another reason, which requires no attention at our hands.

No question is made as to the power of the Court of Probate, or of the Superior Court on appeal, to entertain the two petitions under consideration, and to grant the relief asked for in them. The only questions presented here relate to the rulings of the Superior Court during the progress of its hearing, and in arriving at its decisions and judgment.

In the Superior Court, upon the hearing on appeal, the appellant claimed that the burden of proof was not upon him to establish the claimed indebtedness, but upon the claimed debtor executor. This claim was correctly overruled. While the appeal to the Superior Court was single, it involved two orders independently and successively made in the course of the settlement of the estate. The first related to the correction of the inventory. As related to the petition to secure this correction, the burden of proving the asserted fact, that there were uninventoried assets, was clearly upon the appellant, who made the assertion and prayed relief. Coming to the later order, accepting the final account, it is doubtless true that the ultimate burden of satisfying the court of the correctness of the account was upon the executors. When, however, they made oath to it, as they were required to do, and it appeared

that in it they had charged themselves with the amount of the inventory as previously determined for the purposes of the court's action in administering the estate, they had so far discharged their duty in the premises that, until the completeness of the inventory was successfully challenged, the burden of establishing the correctness of their account in a matter concerning which it was the office of the inventory to speak had been sufficiently borne. The challenger in such a case would be in no more favorable position than he would be in a direct attempt to secure a correction of the inventory.

Upon the trial it was further claimed by the appellant that if there were reasonable doubt as to the existence of the claimed indebtedness, the final account should not be allowed until such doubt could be resolved by due process of law. It is to be noticed that the assignment of error based upon the overruling of this claim necessarily assumes, and without warrant, that the trial court entertained a doubt upon the subject of the existence of the alleged indebtedness. It also concedes that the court might act in its discretion. But these matters aside, it is clear that the court acted properly in proceeding to determine the questions before it.

Upon the trial the appellant called a witness who was asked in regard to what statements, if any, he had heard the decedent make in regard to an indebtedness to him on the part of his son, the claimed debtor in question. Upon objection the questions were excluded.

It is conceded that the line of inquiry forbidden was improper unless authorized by § 705 of the General Statutes, which provides that "in actions by or against the representatives of deceased persons, the entries, memoranda, and declarations of the deceased, relevant to the matter in issue, may be received as evidence," etc. It was clearly proper, if the proceeding before the court is

to be regarded as an action by or against the representatives of a deceased person within the meaning and intent of the statute.  Was it such an action?  Our answer involves an interpretation of the legislative language.

"All statutes, whether remedial or penal, should be construed according to the apparent intention of the legislature, to be gathered from the entire language used, in connection with the subject and purpose of the law."  *Bissell* v. *Beckwith*, 32 Conn. 509, 516. "The mischief which the statute was designed to remedy is an important guide in ascertaining its meaning." *National Fireproofing Co.* v. *Huntington*, 81 Conn. 632, 633, 71 Atl. 911.  "In construing the legislative language, therefore, we are bound as far as we may to give effect to the legislative intent and advance the remedy manifestly sought to be supplied.  To this end, adherence to the strict meaning of words and the precise letter of the language is not required."  *Stapleberg* v. *Stapleberg*, 77 Conn. 31, 35, 58 Atl. 233.  In giving such construction "the application of common sense to the language, is not to be excluded."  *Faulkner* v. *Solazzi*, 79 Conn. 541, 547, 65 Atl. 947.

The statute under consideration is a highly remedial one.  Its aim was to take away the great advantage which under pre-existing law living persons had over the representatives of the deceased.  *Bissell* v. *Beckwith*, 32 Conn. 509, 516; *Rowland* v. *Philadelphia, W. & B. R. Co.*, 63 Conn. 415, 417, 28 Atl. 102.  This advantage was one which found its expression in unwarranted inroads upon estates of deceased persons in favor of the living whose mouths were not closed.  The object of the statute was to prevent these inroads. The method adopted was one whose purpose was to bring the living and the representatives of the dead upon as equal a footing as possible before the courts, by per-

mitting the declarations, entries, and memoranda of the dead to be received and weighed in the evidential balance in connection with the assertions of the living.

It is clear that the evil which the statute was intended to remedy is as present in certain probate appeals as in any other judicial proceeding, and that the remedy provided by it would be as effective and beneficent in such appeals as anywhere. This is peculiarly true of those appeals which directly involve the amount of the net estate of a deceased person.

With these considerations in view, let us examine the statute. We find, in the first place, that the remedy is confined to what are designated as "actions." This is a word which has been employed in a strict technical sense, but we have repeatedly said of it when used, as here, in statutes regulating judicial procedure, that it might well be used in a more general and comprehensive sense, embracing all proceedings in a court of justice for the purpose of obtaining such redress as the law provides. *Waterbury Blank Book Mfg. Co.* v. *Hurlburt*, 73 Conn. 715, 717, 49 Atl. 198; *O'Brien's Petition*, 79 Conn. 46, 59, 63 Atl. 777. In these two cases it was held that proceedings far removed from actions, technically speaking, came within the descriptive term of "actions." Concrete application of the same liberal rule of construction has been made where the judicial proceeding was a probate appeal. *Stiles' Appeal*, 41 Conn. 329, 330; *Campbell's Appeal*, 76 Conn. 284, 56 Atl. 554. The reasons which led to the results reached in these cases are equally present here, and lead to the conclusion that the present proceeding was an action within the intent and meaning of the statute.

But was it an action by or against the representatives of the decedent? The appellees were the executors of the will of the deceased, and therefore his legal representatives. The redress which the appellant was seek-

ing at the hands of the court grew out of their conduct in that capacity. Its aim was to compel them to act for the increase of the estate in their keeping, as they were unwilling to do. They were in court opposing such action. Their position was adversary to the appellant, and it was so in a matter which directly concerned the quantum of net estate as distinctly as though a claim against it was being pressed for allowance and resisted. The situation is one which comes within the spirit and purpose of the statute, and we are of the opinion that it comes within its language interpreted according to recognized rules.

The appellees rely upon *Barber's Appeal,* 63 Conn. 393, 412, 27 Atl. 973, as controlling authority for the proposition that the pending proceeding was not an action by or against the representatives of a deceased person within the intention of the statute. It is to be noted that the conclusion announced in that case was a no more comprehensive one than that the then appeal did not come within the provision of the statute. Unfortunately the opinion does not clearly state the court's reasons for reaching this result. As it recognized that probate appeals may be classed as actions, , the inference is strong that it found its reasons in the nature of the appeal then under consideration, which was one from the probate of a will, and held that the conditions named in the statute were not in that proceeding complied with, because it was not one against the executors within its meaning.

The difference between that appeal and the present, both in respect to their essential character and as touching their adversary nature as related to the executors, is marked. The only matter involved in *Barber's Appeal* was whether or not the estate of the deceased should be administered under a certain claimed will. In other words, the matter in issue was the status

of the estate in settlement and the basis of its division when settled. The result could in no manner increase or diminish the quantum of the net estate. There was no issue as to the validity of a claim, or the right to an asset. The executors were simply proponents. We have already had occasion to notice the strikingly different aspects which the present proceeding presents. Beyond the fact that both were appeals from probate, there is an entire want of similarity between them. All the pertinent things which we have relied upon to bring the situation presented by the pending case within the spirit and intent of the statute were absent from the *Barber* case. The opinion in that case certainly presents no reasons which militate in the least against our conclusion in this, and the result then arrived at, which is the only pertinent matter in the decision, is not one which by analogy possesses any real significance as to the result to be arrived at upon this appeal.

There is error, the judgment is set aside and a new trial ordered.

In this opinion the other judges concurred.