Bromweiíl, J.
Heard on motion to quash.
The Grand Jury of Hamilton County returned an indictment against the Ice Delivery Company and the other defendants herein, charging that said defendants—
“On the 15th day of June, in the year 1906, with force and arms, at the county of Hamilton aforesaid, were active members of, acted with and in pursuance of, and aided and assisted in carrying out the purposes of an association of persons, firms, partnerships and corporations, the said association being organized for the following purposes, to-wit:
“First. To create and carry out restrictions in trade and commerce in ice.
“Second. To increase the price of a certain commodity, to-wit, ice.
“Third. To prevent competition in the manufacturing, making, purchase and sale of a certain commodity, to-wit, icc.
“Fourth. To fix at a certain standard and figure, whereby the price of ice, an article of merchandise intended for sale, barter, use and consumption in the state of Ohio, to the public and consumer was controlled, then and there, by said association, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the state of Ohio.”
To this indictment the defendants have filed a motion to quash on the following grounds, viz.:
“That there are defects upon the face of the record in this, to-wit:
“1st. Said indictment contains a charge of more.than one offense.
“2d. The indictment contains no allegation as to where the alleged association existed.
‘ ‘ 3d. The indictment contains no allegation in the first three clauses, of purposes named of any intention to restrict trade, increase the price of, or prevent competition in ice in the state of Ohio,
“4th. The Indictment fails to show or set forth the manner in whloh tho pihua úí iw mift fixed, oiMwttulM,
*91 “5th. The indictment contains no allegation of knowledge of the purposes of the association on the part of the defendants, or that any of the defendants performed any acts in violation of said section.
“6th. Other defects apparent upon the record.”
Under the statute, Section 7249, “A 'motion to quash may be made in all cases when there is a defect apparent upon the face of the record, including defects in the form of the indictment, or in the manner in which an offense is charged.”
It is sometimes difficult to distinguish between proper grounds for a motion to quash and those for a demurrer; but, although the state suggests that some of the grounds alleged in this case might more properly be urged by demurrer than by motion to quash, we. shall, for the purposes of this case, consider all.of the reasons set forth in the motion we are now considering as being appropriate to that motion and will pass upon them in the order in which they are presented.
1. As to duplicity in the indictment. The defendant claims that “said indictment contains a charge of more than one offense, and that it sets out, in one count, the violation of each of the subdivisions of the first section of the so-called Valentine Anti-trust act,” and that by reason thereof, it must be defective for duplicity.
To support this contention defendant cites the case of State v. Gage, 72 Ohio St., 210, and particularly the language of the court in that case as found on page 229.
That was a suit brought under the so-called Valentine-Stewart Anti-trust law (93 O. L., 143, now Section 4427 1-12), being the same act under which the indictment is brought in this case.
The following are the sections of said- act involved in the present proceeding:
Section 4427-1. A trust is a combination of (a) capital, (b) skill or (c) acts; by two or more (a) persons, (b) firms, (c) partnerships, (d) corporations, (e) or associations of persons or any two or more of them for either, any or all of the following purposes:
1, To m#' or uimy out rcfitriptiow in trado Of flommorpp,
*92 2. To limit or reduce the production, or increase, or reduce the price of merchandise or any commodity.
. 3. To prevent competition in manufacturing, making, transportation, sale or purchase of merchandise, produce or any commodity.
4. To fix at any standard or figure any article or com-' modify of merchandise, produce or commerce intended for sale, barter, use or consumption in this state, whereby (i. e., by the standard or figure fixed) its price to the public or consumer shall in any manner be controlled or established.
“Section 4427-4. Any violation of either or all of the provisions of this act shall be and is hereby declared a conspiracy against trade, and any person who may become engaged in any such conspiracy or take part therein, or aid or advise in its connnission, or who shall as principal, manager, director, agent, servant or employer, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, or furnish any information to assist in carrying out such purposes, or orders thereunder or in pursuance thereof, shall be punished by a fine of not less than fifty dollars ($50) nor more than five thousand ($5,000) dollars1, or be imprisoned not less than six months, nor more than one year, or by both such fine and imprisonment. Each day’s violation of this provision shall constitute a separate offense. ’ ’
“Section 4427-5. In any indictment for any offense named in this act, it is sufficient to state the purpose or effects of the trust or combination. And that the accused is a member of, acted with or in pursuance of it, or aided or assisted in carrying out its purposes, without giving its name or description, or'hbw, when and where it was created.”
“Section 4427-6. In prosecutions under this act, it shall be sufficient to prove that a trust or combination, as defined herein, exists, and that the defendant belonged to it, or acted for or in connection with it, without proving all the members' belonging to it, or proving or producing any article of agreement, or any written instrument on which it may have been based; or that it was evidenced by any written instrument at all. The character of the trust or combination alleged may be established by proof of its general reputation as such.”
“Section 4427-9. That the provisions hereof shall be held cumulative of each other and of all other laws in any way affecting them now in force in this state.”
*93 The indictment against Gage, in the case cited above, eharged that he—
‘ ‘ Said Perley W. Gage,’ late of said county of Delaware, was an active member of, ■ acted with and in pursuance of, aided and assisted in carrying out -the purposes of the Delaware Coal Exchange, an association of persons organized for the purpose of preventing competition in the sale, and to maintain a'uniform and graduated figure for the sale of coal, and to directly preclude a free and unrestricted competition among the members of said association, purchasers and consumers in the sale and transportation- of coal, contrary to the form of the statute in such case made and provided and against .the peace and dignity of the state of Ohio. ’ ’
The defendant demurred to the indictment on the ground—
“1st. That the facts charged do not constitute an offense against the laws of Ohio.
“2d. That the statute under which the indictment was presented is unconstitutional and void.”
The demurrer was overruled, plea of guilty entered, sentence of fine and motion in arrest of judgment, which was overruled.
The court decided that the act was constitutional and that the indictment was sufficient to charge the offense.
The question of duplicity was not raised either by motion or demurrer, although the indictment shows that the defendant was charged with being a member of an association- * ® * organized for the purpose of “preventing competition in -the sale of coal,” which charge relates to the third paragraph of Section 1 of the act; and also “to maintain a uniform and graduated figure for the sale of coal,” which relates to the fifth paragraph, and also, “to directly preclude a free and unrestricted competition among the members,” etc., which relates also to the. fifth paragraph.
According to the theory of the defense in this case the- indictment in the Gage case was defective because three separate and distinct offenses were charged in one count, one made so by paragraph 3 of the act and the other two by paragraph 5.
But it is a familiar.rule of pleading that a demurrer “searches the whole record”; and, as the Supreme Court had this in *94 dietment before it on demurrer, it was its duty to, and no doubt it did, examine the indictment for other defects than those alleged especially as ground for demurrer; the fact that the court made no such criticism upon the indictment in that case would seem to be conclusive against the claim of duplicity charged in the present case, which resembles the Gage indictment and differs from it only in setting forth four of the methods and purposes of the combination instead of three as in that case.
But we do not have to rely on that case alone in reaching this conclusion-. The following citations from Ohio cases seem to make clear the rule as to duplicity in a single count in an indictment.
In the case of Foster v. State, 1 C. C., 467, three persons were indicted for three several acts, each of which was a violation of law. But the court held that, as but a single general offense was charged, and the three defendants might have been found guilty either as principals or as aiders and abettors, of each- of the offenses, the indictment was not bad for duplicity.
In the case of Blair v. The State, 5 C. C., 496, the indictment charged defendant with an assault with intent to rob, an attempt to perpetrate a robbery, and with murder, all in one count. A demurrer was filed charging duplicity. The court said, page 502:
“So that, conceding for the salee of argument, that, omitting the alleged in dependent charge of assault with intent to rob, the indictment sufficiently charges an attempt to’ perpetrate a robbery, how is plaintiff in error injured by two averments of the same attempt, or two averments of' some of the facts amounting to such attempt to rob? Not all indictments charging two offenses in one and the same count -are bad. Breese v. State, 12 Ohio State, 146.”
In the case of The State v. Daniel Bauer, 1 O. N. P., 103, tried before Judge Evans of this court, two of the counsel for defendants in the present case represented opposite sides. The charge was soliciting a. -bribe. The language of the indictment was in the conjunctive, i. e., “with respect to his action, vote, opinion, and judgment,” while the language of the statute under which it was drawn was in the disjunctive, i. e., “with respect to his action, vote, opinion or judgment.”
*95 A motion to quash for duplicity was overruled, the court citing Watson v. State, 39 O. S., 123; State v. Connor, 30 O. S., 405; Mackey v. State, 3 O. S., 363.
In the case of Mackey v. State, 3 O. S., 363, the third syllabus reads as follows:
“An allegation of uttering a false, forged, and counterfeited bank note, is not bad for repugnancy.”
Here, according to contention of defendants in this case (and as claimed in the ease cited), are three distinct offenses, viz., uttering a false note, uttering a forged note, and uttering a counterfeit note. It is true that the statement of this case does not inform us whether these three offenses were charged in a single count or in several; but the natural inference from the manner in which they are grouped in the syllabus would be that they were in a single count. The. court did not pass upon the question of duplicity but did upon the question of repugnancy as above.
In the ease of Breese v. The State, 12 O. S., 146, there Avas but one count which contained a charge of burglary and also a charge of larceny. Demurrer filed for duplicity because the “indictment 'contains but one count — charging two distinct crimes — burglary, a penitentiary offense, and larceny, punishable only by fine and imprisonment in the county jail.”
The court, while stating the general rule to be that two distinct crimes or offenses can not properly be shown in the same count of an indictment, also stated that this rule was by no means of universal application and that one of the exceptions, as Avell established as the rule itself, is that a burglary and larceny, committed at the same lime, may be thus united. The court thinks that the clause, “committed at the same time,” taken in connection with the fact that the íavo offenses while distinct crimes, grew out of and formed parts of the same transaction, is the key to this decision.
In the case of The State v. Hennessey, 23 O. S., 339, the syllabus is:
“Where several articles of property are stolen at the same time, the transaction being the same, the Avhole, although they *96 belong to different owners, may be embraced in one count of the indictment and the taking thereof charged as one offense.”
The indictment was for larceny.- The second count charged the stealing of certain articles belonging to one person, and also the stealing of certain other articles belonging 'to another person, the values being separately stated. The court held as above.
In the case of The State v. Conner, 30 O. S., 405, the first syllabus is as follows:
“Under the act ‘to provide against the evils resulting from the sale of intoxicating liquors in the state of Ohio,’ a count in an indictment charging that the defendant unlawfully, etc., sold intoxicating liquors to one ‘being then and there intoxicated and in the habit of getting intoxicated,’ defendant knowing, etc., is not bad for duplicity.”
This was an indictment in which it was claimed that in the third count two distinct offenses were charged, viz., that of selling to a person intoxicated and that of selling to a person in the habit of getting intoxicated, and that it was bad for' duplicity. The court said-—
“The offense is a single one. There is but one sale of liquor and but one person to whom it was sold. The fact'that such person represents two characters, under the statute, does not make the offense double. * * * It is universally laid down that where the offense is thus marked by the disjunctive e orj ” (in the statute defining it), “the indictment may well charge by substituting ‘and.’ Bishop on Statutory crimes, speaking of the alternative crimes, says, Section 383: ‘ If an indictment is to be drawn on a statute in alternative clauses, the pleader may, as a general rule, * * elect to charge no more than constitutes an offense within one clause, or he may proceed upon two clauses, or three, or all, as he deems- best, and all in a single count, employing the conjunctive ‘and’ when the statute has the disjunctive ‘or.’ ”
In the case of Jackson v. The State, 39 O. S., 37, the first syllabus is as follows:
“A count in an indictment in which the- defendant is charged with robbery -and with murder while in the commission of the *97 robbery, and in which it is alleged that the blows which caused death were struck by the defendant with a piece of iron, a sledge and a shovel, is not bad for duplicity;. the state can not be required to elect upon a trial on such count, and evidence of the robbery and the use of each of the implements in producing death is admissible.”
In the ease of Watson v. State, 39 O. S., 123, the second clause of the syllabus is as follows:
“A single count in such indictment, which charged that B was a member of the house, and also a member of a standing committee of such house to which the bill was referred, and that the offer or promise was made to influence his vote therefor in the house, and his vote for a favorable report thereon in the committeee, is not bad for duplicity. The charge thus made constitutes but one offense under' the statute.”
In the case of Hale v. The State, 58 O. S., 676, the first-two clauses of the syllabus are as follows:
“1. When an offense against a criminal statute may, in the same transaction, be committed in one or more of several ways as therein- provided, the indictment may, in a single count, charge its commission in any or all of the ways specified, if they are not repugnant.
“2. An indictment drawn'under the act ‘to regulate the practice of medicine in the state of Ohio’ (92 O. L., 44), which charges that the defendant, without having complied -with the provisions of the act, for a fee prescribed, directed and reemended for the use of a person named, a drug medicine, and agency, put up in a paper box on which he wrote directions to which he signed his name and appended thereto the letters ‘M. D.,’ is not bad for duplicity.”
It ivas contended in this ease (page 679), that as the indictment, in the same count, charged that the accused prescribed a medicine for the use of a person named, and appended t.he letters “M. D.” to his name subscribed to directions written on-the package for the use of the medicine, two distinct offenses were charged and the indictment therefore bad for duplicity. The court said (page 679) :
“It appears to be a well settled rule of criminal pleading that, when an offense against a criminal statute may, in the *98 same transaction, be committed in one or more of several ways, as therein provided, the indictment may, in a single count, charge its commission in any or all of the ways specified in the statute, if they are not repugnant; and proof of any one of them will sustain the indictment. This rule is more fully stated in Bishop’s New Criminal Procedure, Yol. 1, Section 436, as follows:
“ ‘A statute often makes punishable the doing of one thing, or another, sometimes specifying a considerable number1 of things. Then by proper and ordinary construction a person who, in one transaction, does all, violates the statute but once, and incurs only one penalty. Yet he violates it equally by doing one of the things. Therefore, an indictment on such a statute may allege, in a single count, that the defendant did as many of the forbidden things as the pleader chooses, employing the conjunction “and” where the statute has “or,” and it will be established at the trial by proof of any one of them.’ ”
The court further said (page 680):
ifNor is this indictment open to the objection of duplicity because it charges that the defendant prescribed, directed and recommended the remedy, and describes the latter as a drug, medicine and agency for the treatment, cure, and relief of a wound, fracture, and bodily injury, although the statute is in the alternative and makes it an offense to do either of the things mentioned; for they are not repugnant and all of them may occur in the same transaction constituting but one offense. Upon this principle it was held that where a statute made it a crime to use instruments, or administer drugs, to produce an abortion, an indictment drawn on it was not double which charged that both of those means were employed by the defendant in the commission of the offense (Commonwealth v. Brown, 14 Gray, 419). And under a statute which prohibited the unlicensed sale of rum, brandy, whiskey or gin, it was held proper to charge, in a single count, the sale of all these various kinds of liquors (Ranson v. State, 19 Conn., 292). Numerous •cases are found in the books in which indictments so drawn on alternative statutes, have been sustained. Bishop on Statutory Crimes, Sections 244, 383; Bishop’s New Criminal Procedure, Section 586.”
In the case of Smith v. State, 59 O. S., 350, the first syllabus is as follows:
*99 “An indictment which charges that the accused on a specified day received and concealed different chattels which had been stolen from different owners, is not bad for duplicity.”
The first sentence of the fourth syllabus draws a distinction between offenses growing out of the same transaction at the same time, referred to in the first clause of the syllabus, and different offenses at different times growing out of different transactions. It reads as follows:
“Receiving or concealing different articles of property at different times and on separate occasions, constitute distinct offenses and can not be prosecuted as one crime, though all the property be thereafter found in the possession of the defendant at one time and place.”
In the case of The State v. Inskeep, 49 O. S., 228, the defendant was indicted for making an assault and also for striking and wounding. The trial court sustained a motion to quash on the ground that it contained but one count and two separate and distinct offenses. This was reversed by the Supreme Court, which held that “The indictment is not bad for duplicity and is in proper form.”
In the ease of Gordon v. State, 46 O. S., 607, the court on page 626, said:
“No matters, however multifarious, will operate to make a declaration or information double provided, that all taken, together, constitute but one connected charge, or one transaction. A man may, accordingly, be indicted for the battery of two or more persons in the same count; or for libel upon two or more persons when the publication is one single act; or for selling liquor to two or more persons without rendering the count bad for duplicity. ’ ’
Hie indictment in this case charged that defendant unlawfully sold intoxicating liquors, other than cider, * * * to be used as a beverage, to divers persons whose names to the jurors were unknown * * * following almost exactly the language of the statute defining the offense. Defendant claimed that it was bad for duplicity in charging several different offenses in a single count. The court ruled otherwise as above. See, also, State v. Sparks, 1 O. Dec., 275.
*100 The language of the Supreme Court in the Gage, case (72 O. S., 221), cited by defendant, must be taken in connection with the subject it was then passing upon.’ The claim had been made that the entire act was indivisible and was to be construed as a whole; that certain sections of it, viz., Sections 4, 5, 6 and 7, were unconstitutional, and if that were true the entire act was tainted and of no validity. It was in connection with these sections and this claim of unconstitutionality that the court said—
“The case, therefore, offers no opportunity for the application of the principle * * * that where an act contains an indivisible proposition whose terms include contracts which the Legislature is powerless to prohibit, the courts can not save the act by restricting the natural and obvious meaning of its terms. ’ ’
'That the court in this ease would go beyond the two grounds urged by the plaintiff in error and search the indictment for any other defect is sustained by. the case of Reed v. The State, 15 Ohio, 222, where Judge Wood says:
“For while in civil cases we are not astute in searching for errors not expressly raised on the record, but consider our duty as discharged when we dispose of the case made by those who represent the parties in interest, in criminal prosecutions a different rule prevails. The court, then, in the administration of criminal justice, are at least quasi counsel for the accused; and in revising the proceedings of an inferior tribunal, will overlook no substantial defect in the record, though not expressly assigned, any more than permit on trial an improper conviction to be obtained by false issues presented through the forms of pleading and by the unskillfullness of counsel. ’ ’
I have gone thus fully into the question of duplicity, not because it seems to be directly involved in the case under consideration, but because of the stress laid upon it by counsel for defendant in support of the motion. The indictment and the statute being read in the light of the foregoing decisions would seem beyond a doubt to set up but one offense charged in the indictment, viz., that defendants “were active members of, acted with and in pursuance of, and aided and assisted in carrying .out the pm-pose of an association,” etc.
*101 The court therefore finds the claim of defendant that the indictment is bad for duplicity is not well taken.
2. The second reason urged by defendant as a ground to quash is that “the indictment contains no allegation as to where the alleged association existed.”
In considering this alleged defect in the indictment it seems sufficient to call attention to the.fact that the locus of the association or combination is not prescribed, fixed by or in any manner referred to in the statute itself, and so far as anything appears in the law, it is entirely immaterial where the trust or combination itself exists, whether in Ohio or outside of Ohio.
Section 5 of the act provides that it shall be unnecessary in any indictment brought under this act to give the name or description of the trust or combination or to1 state how, when or where, it ivas created,. It does not, in so many words, say that it shall be unnecessary to set out where such trust or combination is located and doing business at the time charged in the indictment, but as this is a collateral fact and not the gist of the offense charged, is it not reasonable to presume that the word “description” as used in the act is sufficiently explicit and broad enough to cover as a part of the description the place where the trust or combination exists. In support of this inference we again call attention to the Gage case, in which the indictment was similar to the one under consideration in that it contained no averment as to the place where the trust or combination of which the defendant was a member existed or did business, and again we may well assume that in searching the record for errors in that case the Supreme Court would have detected this omission if it were error as claimed.
It must be remembered that this indictment is not against the trust or combination as an entity, if it were, the venue of such indictment would probably be the county where said trust' or combination carried on its business or committed some overt act in violation of the law and this venue would have to appear in the indictment. But the offense charged in the indictment before us is against the individual members of the combination and not against the combination itself, and the individual members are not charged with overt acts unless, indeed by the *102 language that they “aided and assisted in carrying out the purposes” of said combination.
But even with such an assumption this language might be construed as redundant and there would still be enough left in the indictment to properly charge an offense against the law.
The act does not require the charging of any overt act. The mere passive condition of being members of the trust or combination is all that is required and the venue of this indictment is the place where these defendants individually, and not as a trust or combination taken as a whole, were existing or residing at the time they were active members of said combination; or acted with said combination or aided or assisted in carrying out its purposes, and this venue is plainly charged in the indictment to be Hamilton county, Ohio.
If it should appear on the trial of this cause that any one or more of the defendants were not residing or existing in Hamilton county, Ohio, at the time of the alleged offense, such fact might be pleaded as a defense by reason of such non-residence ; but that is a matter that can not be set up in a motion to quash, which goes only to defects apparent upon the record and no such defect as to the venue of any of the defendants appears in the indictment but, on the contrary, proper venue is expressly averred.
In the case of The State v. Dangber, 74 O. S., 51, where the offense charged was the failure of a child to support his parent and where the evidence showed that the former resided in one county and the latter in a different county and also showed that the defendant had not been present in the county of the parent during the time laid in the indictment, the court found that the venue of the indictment was that of the child and not that of the parent. Here was no overt act but only a passive offense of failing to perform the duty of giving support. The court said:
“Generally speaking, it is a fundamental rule of criminal procedure that one who commits a crime is answerable therefor only in the jurisdiction where the crime is committed, and, in nil criminal pyoseimticma, in the absence of statutory ju'civifeion to tlio conttmy, voto nuwt ho htirt in tbo flonnty, *103 of the offense. # * * An offense is committed in that county in which the acts constituting the same are done. * * * This statute defines and prescribes but a single offense — that of non-support of a parent; and it is the act of the child in failing to support * * * that constitutes the offense.”
"We agree with counsel for defendants that the Legislature of Ohio “has no extra-territorial jurisdiction” and that the offense must be laid in the indictment as having been committed in Ohio and, generally, in the county where the offense was committed. But this statement of the law of venue has no application in this case for the reasons already given. We do not agree with them in the inference that the- act under consideration “could relate only to combinations organized and existing within the state of Ohio.” Section 5 of the act expressly dispenses with the necessity of stating how, when or tuhere such trust or combination is created.
Granting that the title of the act casts light upon the intention of the Legislature in framing the law, we still can not agree with the defendants that the title in this case limits the provisions of the act to membership in Ohio trusts or combinations. The title is in the following words:
“An act to define trusts and to provide for criminal penalties and civil damages and punishment of corporations, - persons, firms and associations, or persons connected with them, and to promote free competition in commerce and all classes of business in the state. ’ ’
While we recognize, under the opinion of the Supreme Court, in the case of Burgett, 1 Ohio, 480, and State v. Pugh, 43 Ohio State, 113, the rule that the title may be read, as explanatory of any doubtful matter in the act itself, it does not seem to us that there is anything doubtful in the meaning of the act which requires explanation or that there is any inconsistency between the language of the title and the purposes of the act.
Sutherland on Statutory Construction, Section 339, says:
“But the title can not enlarge or confer powers, control the plain words of the aet, or extend the purview to objects men» Monet! in th(> title but not \n the act, Wbei’o text of Ihf *104 statute is plain and unambiguous, the title can not have the effect to modify it.”
The last clause of this title states one of the purposes of the act to be “to promote free competition in commerce and all classes of business in the state,” and this- is the only clause in the title which limits the scope of any of the purpose of the act to the state of Ohio. It does not set forth that this act is to define trusts created or existing in Ohio; it does not limit its penalties and punishments to Ohio corporations or associa^tions, for Section 3 of the act contains a special provision against foreign corporations and associations violating its provisions.
If there were any doubt whatever upon the applicability of the act to foreign corporations, trusts or combinations, Section 12, defining the meaning of the word “persons,” wherever it appears in the act, says that it shall include ‘ ‘corporations, partnerships and associations existing under or authorized by the state of Ohio, or any other state-or any foreign country.” Substituting these last words in place of the word person or persons where they occur in the act, makes it evident that the contention of defendant upon the point raised in its second objection to the indictment is not well taken.
3. The third claim advanced by defendant is that—
“The indictment contains no allegation in the first three clauses or purposes named, of any intention to restrict trade, increase the price of, or prevent competition in ice in the slate of Ohio.”
If we are correct in our interpretation of the legislative intent, there is in the act no limitation upon the first three purposes set forth in Section 1, to Ohio trusts and combinations. Such combinations as have the purp.ose to do the things set forth in these three sections are declared to be trusts under our law, no matter whether the purposes are to be carried out in Ohio or outside of this state. The allegation or averment in the indictment that the illegal combination is formed to do these things in Ohio is dispensed with by the statute itself in Sections 1, 5 and 12.
The fourth clause of the first section “fixing at a standard or figure, etc.,” closes-with the clause “in this state.” This *105 clause would undoubtedly require that the averment in the indictment which recites this fourth clause as one of the purposes of the trust or combination should set out that the purposes contained in said clause were to be carried out in the state of Ohio and that averment is found in the indictment in this case. This last statement is made as applicable to a case where the purpose is that contained in the fourth clause alone.
But the indictment in this case goes further than that and places the venue of these purposes in Hamilton county,1 Ohio, the semi-colon at the end of each of the first three sections being only an abbreviated form of the word “and” and all of the clauses being connected up into one continuous sentence by that means.
It may be well construed that it was the intention of the Legislature to have this clause “in this state” apply to the first three purposes as well as the fourth, it being omitted only in order to avoid tautology.
Incidentally we might say that even if this objection made by defendant to the first three clauses in the indictment as not alleging venue were tenable, which we do not think to'be the case for the reasons given above, yet they might be rejected as surplusage and, the fourth clause being free from this infirmity, if it is one, would save the indictment from being quashed.
Recurring again to the Gage case, we call attention to ■ the fact that the indictment in that case and this are identical in omitting the clauses fixing venue which defendants claim should have been contained in the present indictment, and again assuming that the Supreme Court in the Gage case found no such objection, we must conclude that the claim of defendants upon this point is not well taken.
4. The next contention of defendants is that—
“The indictment fails to show or set forth the manner in which the price of ice was fixed or controlled.”
It might be sufficient to say that the price of ice was not required to be charged as fixed or controlled by the defendants in this case, whatever may have been done by the trust or combination to which they are alleged to belong. In the view *106 which we have already expressed as to the proper construction of this act, there are but three elements necessary to constitute the offense charged in the indictment, viz:
1st. Was there an ice trust, as defined by the act?
2d. Were defendants members of that trust? ,
3d. Were defendants, at the time of the alleged offense, residents of or existing in Hamilton county, Ohio?
Whether the trust did or did not carry out any, a part of all of the purposes referred to, or the manner in which it carried any or all of them out by overt acts is entirely immaterial. The fact that the indictment does not aver the particular manner in which the trust controlled the price of ice or the means by which it proposed to do so does not, in view of the language of Section 5, viz., “In any indictment for any offense'named in this act, it is sufficient to state the purpose or effects of the trust or combination,” make it defective.
If we construe the law correctly, it is not necessary for the trust to do any overt act beyond the organization of the conspiracy or combination, nor for the individual members of the trust to do' anything more than to be a member of it. Of course, overt acts may be done by both; but for the purposes of this case no overt act needed to be alleged to make out the offense.
Again we refer to the Gage case in support of our belief that this objection to the indictment is not well founded.
5. The next claim of defendants is that—
“The indictment contains no allegation of knowledge of the purposes of the association on the part of the defendants or that any of the defendants performed any act in violation of said section.1 ’
This objection raises the question of knowledge and overt acts. As to overt acts, we may repeat what we have previously called attention to, that the gist of the offense charged in this indictment is the conspiracy. It is well settled that in cases of conspiracy,' while overt acts may be averred and proven, they are not required to be, as a rule. Especially is that true where the conspiracy is made an offense as in this case by a statute which sets forth all the essential elements of the offense.
*107 In the ease of Needles v. The Bishop & Babcock Company, 2 N. P.—N. S., page 77, which was a suit under the Valentine act, the second and third clauses of the syllabus are as follows:
“Allegations as to a combination to regulate and control the quantity and price of supplies to the damage of the plaintiff are good against the defendants at common law, and without regard to the constitutionality of the Valentine Anti-trust act.
“The test as to the illegality of such a combination is its tendency to endanger the public by controlling prices^, limiting production and suppressing competition in such a way as to restrain trade and create a monopoly.”
In McClain on Criminal Law, Section 966, we find the following : ■
“* * * The crime” (conspiracy) “consists in the unlawful combination and not in what is done toward carrying out such combination, and the crime is completed when the conspiracy is entered into, although no act done in pursuance thereof is committed.” (Citing in the foot-note a largo number of cases.)
Also from the same section we cite the following:
“A conspiracy to do an unlawful act is a separate and distinct offense from that of the act itself, and is to be governed in its prosecution by provisions relating to conspiracy and not to those relating to the specific offense. * * “ Indeed, it is not necessary that the overt act be the completed purpose intended to be accomplished by the combination, and it may be done outside the jurisdiction of the court in which the conspiracy is prosecuted.1 ’
Section 972, same work, might have been cited in connection with the previous discussion upon the subject of venue, but is here inserted as reflecting upon the general rule governing conspiracies.
“Section 972. The venue of the offense is either where a conspiracy is formed or where the overt act thereunder is done. * * * It seems also that the offense is punishable where the conspiracy is entered into although it contemplates doing a wrongful act elsewhere.” (Citing 27 Fed. R, 606, and Bloomer v. State, 48 Md., 521.)
Section 977 of the same work says:
“From what has already been said in regard to an overt act, it is plain that it is not necessary to charge anything that is *108 done in pursuance of the conspiracy except where, by statute, an overt act is required. If the indictment alleges substantially the facts necessary to show a conspiracy, no act done or injury suffered in consequence thereof need be charged.”
There is but one place in the entire act under consideration where the scienter or knowledge of the unlawful act is required and that is in Section 4. This section groups offenders against the act into two classes. The first commit the offense by doing certain acts, whether knowingly or not, and the second class must have the guilty knowledge before they can be considered as violating the law. Let us separate these groups so as to discover whether the defendants, if guilty as charged, are described in either group, and, if so, which one.
The language which describes the first group is as follows:
1 ‘Any person who may become engaged in any such conspiracy or take part therein, or aid or advise in its commission.”
This refers to' the constituents or members who- form the component parts of the combination and furnish the capital, skill or acts referred to in the first section. The very fact of their engaging in the conspiracy creates a presumption of knowledge of the purposes for which it was formed and dispenses with the averment or proof of knowledge. No doubt, however, that actual ignorance of such purposes could be proven as a defense upon the trial of the charge.
The second group is described as follows:
“(any person-)* * * who shall,-as principal, manager, director, agent, servant or employer, or in any other capacity, knowingly carry out any of the stipulations, purposes, prices, rates, or furnish any information- to assist in carrying out such purposes or orders thereunder, or in- pursuance thereof.”
In this group the knowledge of the wrongful act is material, is set out in the statute and'must be averred in the indictment. The persons described in this second group are the active factors or servants, speaking broadly, of the combination, who put into operation the machinery of the trust to carry out its purposes, as distinguished from the more passive persons described in the first group who, while members of the trust, have no active connection with the management of its business.
*109 Counsel for the defendants argue that the word “knowingly” in this action relates back and attaches to the first group as well as the second. If that were the intent, its natural position in the statute would be in the third line instead of the sixth and the section would read, “any person who knowingly may become engaged,” etc.
This would be the grammatical and rhetorical location of the word “knowingly” if the intent of the Legislature had been as suggested by defendants, and the fact that it is thus detached would seem to be conclusive that it was to refer to the second group only.
The indictment in the present ease, by its averment, puts the defendants in the first group where knowledge is not made a material or essential part of the offense, and, as it would not require proof, so it need not be averred in the indictment.
The right of the Legislature to pass laws making acts criminal, regardless of the knowledge or intent of the persons who may be accused of committing them, is well recognized. While there has been an extended discussion as to whether, when the act itself which describes the offense does not make knowledge a requisite part thereof, it must, nevertheless, be- averred in the indictment and he proven on the trial, it is quite certain that 'in certain classes of offenses the act may dispense with knowledge as one of its essential elements. This is particularly, the ease with acts under the police power — acts for the preservation of health; to prevent food adulteration and defining offenses against public policy.
The cases cited by counsel for defendant, in which knowledge was required to be averred in the indictment, all involved as a necessary ingredient of the crime, from its very nature, a knowledge of the unlawful character of the act done and an intent, nevertheless, to carry it out. Thus the case of Drake v. State, 19 O. S., 211, was a forgery case; the cases of Fouts v. The State, 8 O. S., 98; Jones v. State, 51 O. S., 331; Kain v. State, 8 O. S., 306; Hagan v. State, 10 O. S., 459, were all murder cases; the case of Mann, v. The State, 47 O. S., 556, decided that “punishable by law” was not sufficient .in describing the offense of administering poison to two colts, etc. The law (Section 6851, *110 Revised Statutes) made malice (which implies knowledge and intent) as an essential to the crime described in said act. All the cases cited involved offenses in which malice or wicked intent' and knowledge were necessarily essential elements.
But, as above stated, there are other classes of offenses which relate to the health, public policy, and similar subjects which have been created by the Legislature in which the element of knowledge has been dispensed with and for the commission of which the accused will be held responsible, although he may, at the time of the offense, have been entirely ignorant that he was violating the law.
A collection of these cases, under the food adulteration and similar statutes, is found elaborately discussed in the case of The State v. Fromer, 7 N. P., 172; also in the case of Altschul v. State, 8 O. C., 214, in the course of which reference is made to the following citation from Bishop on Statutory Crimes:
“Where the statute is silent as to the defendant’s intent and knowledge, the indictment need not allege, or the government’s evidence shows that he knew the fact; his being misled concerning it is matter for him to set up in the defense and proved.”
In the case of State v. Kelly, 54 O. S., 166, which involved the sale of an adulterated food product, the statute did not make knowledge of the adulteration an element in this crime. The second syllabus of the decision is as follows:
“2. In a prosecution under said act it is not a defense that the accused was ignorant of the adulteration of the article which he sells or offers for sale. ’ ’
The court, on page 179 of this case, said:
“If this statute had imposed upon the state the burden of proving the purpose of the vendor in selling an article of food or his knowledge of its adulteration, it would thereby have defeated its declared purpose. Since it is the duty of 'courts to so construe doubtful statutes as to give effect to the purpose of the Legislature, they can not, in ease of a statute whose provisions are unambiguous and whose validity is clear, defeat its purpose by construction.
“The correct view of statutes of this general nature is stated by the Supreme Court of Massachusetts in Commonwealth v. *111 Murphy, 42 N. E. R., 504: ‘Considering the nature of the offense, the purpose to be accomplished, the practical methods available for the enforeement of the law and such other matters as throw light upon the meaning of the language, the question in interpreting a criminal statute is whether the intention of the Legislature was to make knowledge of the facts an essential element of the offense, or to put upon every one the burden of finding out whether his contemplated act is prohibited, and of refraining from it if it is.’ ”
See, also, the case .of Mitchell v. The State, 21 C. C., page 24, where a very full discussion of the subject is given.
One of the latest decided cases on this point is that of Studer v. The State, found in the Ohio Law Reporter of March 4, 1907, 9 C. C.—N. S., 185, where the offense charged was procuration. The court decided that in the indictment charging the offense, where the girl solicited was less than eighteen years of age, it was not necessary to aver in the indictment that the defendant had knowledge of her age. This case was afterwards affirmed without report by the Supreme Court.
See, also, the second ‘syllabus in the case of Bissman v. The State, 9 C. C., page 714, a food adulteration case.
The ease of The State v. Ross, 4 N. P.—N. S., 377, was a prosecution under the Valentine act for conspiracy involving restrictions on furnishing fire insurance. In this ease the same claim was made on demurrer that because the intent was not averred in the first two counts of the indictment and that such intent was necessary to make out the offense, the indictment was, bad. This contention was abandoned, however, before the court passed upon the ease.
The ease of The State v. The King Bridge Company, 7 C. C.—N. S., 557, was a quo warranto proceeding to oust the defendants for violation of this same Valentine act. The first two paragraphs of the syllabus relate to the venue and decide'that suit may be brought in any county where any one or more of the defendant corporations forming the trust is situated or has a place of business, or may be brought in any county where the trust itself does business as a separate entity.
Once more, and finally, we call attention to the fact that upon this question of knowledge and overt act the Gage case *112 is on all fours with the present as to the form of the indictment and must be conclusive upon this point for the reasons heretofore stated.
While we recognize the well established principle that an indictment should aver with certainty the nature of the offense charged, so that the defendant may have opportunity to prepare his defense and to be entitled to the claim of former jeopardy in case of conviction, we also desire to call attention to' the fact that the certainty which is required in the indictment is only certainty to a common intent. Carper v. State, 27 O. S., 572; Roberts v. State, 32 O. S., 172.
We are of the opinion that the indictment in this case sets forth with sufficient certainty the offense charged as to protect the defendants.
In conclusion, having carefully and as thoroughly as is possible in the limited time at our disposal examined the various grounds urged by defendants for quashing the indictment and the authorities cited in support of their contention, and finding the same not well taken, especially in .view of the rule that a motion to quash should not be granted except upon the most convincing proof that it has good reasons to support it, the court overrules the motion to quash the indictment.
Unless counsel wish to advance cause for demurrer in addition to those which have been considered in connection with the motion to quash, counsel may, as a matter of form, if they so desire, file their demurrer upon the same grounds and the court will, without further argument, overrule said demurrer.