## PLACES OF PUBLIC ACCOMMODATION UNDER THE CIVIL RIGHTS STATUTE.

Common Pleas Court of Cuyahoga County.

LEROY FOWLER v. C. T. BENNER.

Decided, August 8, 1912.

*Civil Rights—Confectionery and Ice Cream Parlor Falls Within the Statute, When—Exclusion of a Colored Man—His Right to Maintain an Action for Damages Upheld—Section 10213—Meaning of the Words "Public Accommodation."*

A confectionery store and ice cream parlor, where foods and refreshing non-intoxicating drinks are served, and tables, chairs and other conveniences are provided for the convenience of customers, is a place of "public accommodation" within the meaning of the civil rights statute.

*Sutton & Brown,* for plaintiff in error.
*Lang, Cassidy & Copeland, contra.*

FORAN, J.

On October 4, 1910, the plaintiff in error filed a bill of particulars in the justice court of R. T. Morrow, asking damages against the defendant in error in the sum of $300 for being wrongfully refused accommodations by the defendant in error, at his place of business on Hough avenue, in the city of Cleveland, Ohio.

On October 29, 1910, the cause was tried to a jury. At the conclusion of the plaintiff's testimony, on motion of the defendant's counsel, the court directed the jury to return a verdict for the defendant, which was accordingly done; to all of which the plaintiff then and there excepted, and now prosecutes error to this court to reverse the judgment so rendered against him.

The action was brought and is prosecuted under and by virtue of Sections 4426-1 and 4426-2, Revised Statutes (Sections 12940 and 12941, General Code), which it is claimed confer a right of action on the plaintiff in error, if the allegations in his bill of particulars filed in justice court are true,

The statutes which confer this right of action provide, substantially, that all persons of every race and color, regardless of race and color, within the jurisdiction of the state of Ohio, shall be entitled to the full enjoyment of the accommodations, advantages, facilities and privileges of inns, restaurants, eating houses, barber shops, public conveyances, theaters "*and all other places of public accommodation*"; and for any denial of the full and equal enjoyment of these rights to any citizen, except for reasons applicable alike to all citizens, a right of action accrues to the citizen aggrieved by such denial, against the person denying him such rights or refusing him such accommodations, in an amount not less than fifty nor more than five hundred dollars.

It appears from the record or bill of exceptions that the plaintiff in error, Leroy Fowler, is what is popularly known as a colored man; that he is a citizen of the state of Ohio; that on the 8th day of August, 1910, accompanied by his wife, he entered the defendant's store or place of business and took a seat at a table; that there were no other customers in the place at the time, but shortly thereafter a white lady came in, and, at her request, was served with ice cream soda and candy; that upon his request that he and his wife be served with chocolate soda, the defendant said, "I am sorry; I can't serve colored people"; that the store or place of business of the defendant had a sign on the window, stating it was a confectionery store; that ice cream, soda water, candy, cigars and magazines were there displayed for sale; and that it might be called an ice cream parlor; that on the table, where the plaintiff and his wife sat there was a bill of fare, showing or indicating the drinks offered for sale. It further appears that the plaintiff in error had been to the store before August 8th, 1910, and had purchased candy there; and that he and his wife left the store after the defendant had refused to serve them as above stated.

The defendant in error did not introduce any testimony.

From this record it may fairly be said that the defendant's place of business is a confectionery store and what may popularly be denominated an ice cream parlor. The only question, then, before the court is this: Is a confectionery store and an

ice cream parlor a place of public accommodation? If it is, the judgment of the justice must be reversed; if not, it must be affirmed.

A confectionery store is a place where confections, such as candies, candied fruits, bon bons, caramel comfits, cake and ice cream and other articles prepared with sugar are usually sold. An ice cream parlor is a place where ice cream and confections are sold. It is supplied with tables and chairs for the accommodation and convenience of its patrons. It is also generally, if not invariably, provided with what is known as a soda fountain, by which its patrons may be furnished with a great variety of refreshing drinks, including coffee, either hot or cold. Does such a place come within the meaning of the language used in Section 4426-1, Revised Statutes? This section, after specifically naming inns, restaurants, eating houses and theaters, says and includes "all other places of public accommodation and amusement"; that is, all other places of a similar or like nature, kind and character to those specifically enumerated (*Schultz* v. *Cambridge,* 38 O. S., 659). Is an ice cream parlor and confectionery store, where the patrons of the place are provided with tables, chairs and such conveniences and furnished with food and drink, a place similar to or of the same general character and kind as an eating house or a restaurant? It seems to us that it is, and that there is no such dissimilarity between the two as would justify any other conclusion.

It will not be denied that ice cream, cake and confections of all kinds are foods. A cafe or coffee house where food is furnished patrons is surely of the same general character as a restaurant; and a cafe chantant where the patrons are, in addition to food and drink furnished, also regaled with music and singing of an histrionic character, may also be said to be a place of the same general kind and character as an eating house and a theater. A moving picture show, no matter by what name called, is of the same kind and character as a theater. So, too, a lunch room, or a room furnished with a buffet and tables and chairs for the convenience of customers or patrons, would fall within the purview of the statute as a place of the same kind and character as a restaurant or eating house.

The contention of counsel for the defendant in error, that the words of the statute "all other places of public accommodation and amusement" mean, and must be construed to mean, that the place must be one of amusement as well as of accommodation, can not be entertained. The statute specifically enumerates inns, restaurants, eating houses, barber shops, public conveyances; and the words following, "and all other places of public accommodation and amusement," must be taken to refer to the places previously enumerated respectively; that is, to places of the same general character as inns, restaurants, eating houses or theaters. An inn or an eating house is not a place of amusement, nor is a theater a place similar to an eating house, but primarily a place of amusement or entertainment of a purely intellectual or mental character. These words, then, mean all other places of public accommodation, *or* all other places of public amusement; and may be construed and read *or* whenever the sense requires it.

It may not be unprofitable at this time to inquire what is meant by "a place of public accommodation." Anderson's law dictionary defines the word public, when used as an adjective, as in the phrase "public accommodation," to mean, concerning or affecting the people or community at large; or, a place for the accommodation of all persons. A public place may be defined, generally, to be a place to which any one may have access without trespassing (see Century Dictionary). Under this definition, a person who, by reason of his disorderly habits or condition, would be objectionable to the management or patrons of such public place, might be deemed a trespasser and be ejected therefrom and if the place was one of public accommodation and came within the purview of the statute under consideration, such objectionable person or citizen might be denied access to such a place without violation of this statute, provided the rule applied to all persons and citizens irrespective of race or color.

The word "accommodation," as used in the statute, does not mean to do a favor to a person, such as to loan him money or endorse a note. "A place of accommodation," as used in the statute, means a place where the wants and desires of those who frequent the place may be supplied for a consideration. The word

"place" expresses simply locality, and not of any particular kind unless qualified by an adjective.

The statute in question is based upon the Fourteenth Amendment to the Federal Constitution. In 1866 the Congress of the United States passed what is known as the civil rights bill. The constitutional objection to this bill is, that the federal Congress undertook to perform the duty of protecting the civil rights of citizens, a duty which has always been held to be peculiarly within the province of the sovereign states of the Union; hence the Fourteenth Amendment, which contains the gist of the civil rights bill. All the states of the Union have passed statutes in conformity with the Fourteenth Amendment, and in many instances similar in phraseology. The inhibition contained in the Fourteenth Amendment was intended to secure to a recently emancipated race all the civil rights that the dominant race theretofore had enjoyed (*Ex parte Virginia*, 100 U. S., 212). It has exclusive reference to state action.

If a law operates alike upon all persons and property similarly situated, it is not in conflict with the amendment. If it does not so operate, it is in conflict with it. 127 U. S., 205; 128 U. S., 578.

The statutes of Ohio, it may be said, operate alike upon all persons and citizens, and are therefore not in conflict with this provision of the federal Constitution.

Counsel for the defendant in error relies largely upon the case of *Faulkner* v. *Solozzi*, 79 Conn., 541. In this case it was held that barber shops were not places of public accommodation. Counsel seems to overlook the fact, however, that the Connecticut statute bears no similarity to the Ohio statute, inasmuch as the statute is general in terms and does not specifically enumerate in precise terms the places where every person shall be entitled to the full and equal enjoyment of the advantages and privileges of such place of public accommodation. The Connecticut statute provided that every person who deprives another of "the full and equal enjoyment of the advantages, facilities, accommodations and privileges of any place of public accommodation or amusement or transportation" on account of race or color shall pay double damages to the person injured

thereby. A glance at this statute and the words employed is sufficient to show that the court was given wide latitude in construing the language and giving construction to the words "place of public accommodation." Such latitude of construction is limited in the Ohio statute by the specific enumeration of places, followed by the words "and all other places of public accommodation." For instance, the Ohio statute enumerates inns, restaurants and eating houses, and "all other places" of the same general character or kind as an inn, eating house or restaurant.

The Connecticut decision proceeds upon the theory of the common law definition of place "affected by public interest," which, under the common law, was subject to public regulation, such as *quasi*-public utilities and such as affect the community at large as railroads, telegraphs, telephones, theaters, and gas and water companies. In the opinion of the court the language of the Connecticut statute was not sufficiently broad to include within its scope barber shops.

The case of *Cecil v. Green*, 161 Ill., 265, is also quoted in support of the contention of the defendant in error. In this case it was held, and properly so, that a drug store in which soda water is sold is not a place of public accommodation. A drug store is primarily a place where drugs and medicines are vended and sold, and the soda water fountain is merely an adjunct. A place where soda water alone is sold can not possibly be said to be similar in nature and character to an eating house; but a place where ice cream, confections and cake, which are foods, are sold to patrons, who are furnished with the conveniences of tables and chairs, is in the opinion of the court decidedly a place of the same general kind and character as an eating house or lunch room.

A place of public accommodation, within the meaning of this statute, is generally a resort where those who frequent it remain more or less at ease and comfort for some considerable length of time for the purpose of being physically refreshed and benefited, and for the purpose of transacting business with those who accompany them or those they meet there, by appointment or otherwise. Hence a drug store, a dry goods store,

a grocery store or similar establishment is not a place of public accommodation within the meaning of this statute.

The case of *Keller* v. *Koerber et al*, 61 O. S., 388, is also cited. In this case it is held, that a place where intoxicating liquors are sold at retail is not within the phrase "all other places of public accommodation and amusement." The opinion in this case is a *per curiam*, and is not, we freely admit, as conclusive and illuminating as we might wish. In speaking of places where intoxicating liquors are sold as being within the meaning of the phrase "all other places of public accommodation and amusement," the court says: "This view is much discouraged by the dissimilarity between a place where intoxicating liquor is sold and those which the statute specifically designates." This is not wholly satisfactory. We must look further to obtain the real basis of the decision. The court proceeds to say, that the policy of the state of Ohio is opposed to the traffic in intoxicating liquor, assuming that it is an evil, and seeks to discourage and restrict it, and for that reason the court refused to "interpret this statute as encouraging a traffic which the clearly defined policy of the state discourages.

It is true the court says the statutes of Ohio forbid, under penalties, the sale of intoxicating liquors to minors and persons intoxicated or in the habit of becoming intoxicated, and for that reason a condition should not be inferred which would place the saloon keeper in peril when he refuses to sell to any one; but inasmuch as these statutes apply alike to all persons, regardless of race or color, this can not be the real basis of the decision, which seems to rest clearly upon the theory that this statute should not be so interpreted or construed as to encourage a traffic which the clearly defined policy of the state discourages, by holding that a saloon is a place of public accommodation.

This is in line with the doctrine announced in 74 Minn., 200, where it is held that a saloon does not fall within the provisions of the law containing the general phrase, "all other places of refreshment." It may surely be said that there is a decided difference of opinion as to whether intoxicating liquors are a refreshment. Possibly, taken in but moderate quantities, they may refresh and exhilarate, but if taken to excess, they paralyze

and destroy. And for this reason we are not enlightened by the doctrine of 74 Minn. Referring, however, to the Ohio case of *Keller* v. *Koerber*, 61 O. S., 388, it clearly appears that a saloon was held not to be a place of public accommodation and amusement, for the reason that the clearly defined policy of the state discourages the traffic in intoxicating liquors and regards this traffic as an evil. The decision being based solely upon that ground, it follows, inferentially, that if a saloon or a place where intoxicating liquors are sold was not in conflict with the clearly defined policy of the state, it would be held to be a place of public accommodation. If this be true, how much greater reason have we for holding that a place furnished with tables and chairs and other conveniences for those who frequent it, and where foods and refreshing non-intoxicating drinks are furnished, *is* a place of public accommodation.

It is true that the civil rights statutes are, to some extent, in derogation of private rights, and restrictive of the liberty which a citizen ordinarily enjoys to deal only with those persons with whom he chooses to hold business relations. But it must be remembered that the court assumes no responsibility for the enactment of these laws. The duty of the court, in this instance, is wholly that of interpretation and construction; besides, we believe that, as a general rule, a gentleman, whether white or colored, will never obtrude himself into a place where he knows his presence may be embarrassing or objectionable to the proprietor or his customers.

The statute in question does not prevent the proprietor of any place of public accommodation from refusing to serve any person who, by reason of his disorderely conduct and habits, is objectionable to him or his patrons; but in the exercise of such right of refusal he must not discriminate against a man solely on account of his color or race. He must treat all citizens, irrespective of color or race, precisely alike.

For the reasons above indicated, the judgment of the justice court will be reversed and the case retained in this court for further proceedings.